ROBERT N. HUNTER, JR., Judge.
*174 The State appeals from a pretrial order suppressing Rahmil Ingram's ("Defendant")
*436 statements made to police after waiver of his Miranda rights. Because the trial court failed to resolve material conflicts in the evidence presented at the suppression hearing, we vacate and remand with instructions to make additional findings of fact to resolve these issues.
I. Factual & Procedural History
On 20 February 2012, a Durham County Grand Jury indicted Defendant for two counts of felony assault with a firearm on a law enforcement officer. The indictments read as follows:
[D]efendant ... unlawfully, willfully, and feloniously did assault ... a law enforcement officer ... with a firearm, to wit: the defendant brandished a shotgun and pointed the same at the law enforcement officer just described. At the time of this offense, that law enforcement officer was performing a duty of that office, to wit: ... executing service of a lawfully issued search warrant at the address of 905 Colfax Street, Apartment A, Durham, North Carolina.
On 2 September 2014, Defendant filed a pretrial motion to suppress statements he made to law enforcement officers at Duke Hospital's emergency room moments before undergoing surgery to treat his bullet wounds.
In his affidavit supporting his motion to suppress, Defendant contends he was shot twice by police officers of Durham Police Department's Selective Enforcement Team ("SET"), after they broke down the front door of his family's residence by use of a battering ram and entered using four flash-bang devices. Defendant contends he was asleep in his bedroom when he heard a window bust and a "commotion" that he thought was someone breaking into his home to rob his family. Defendant grabbed his loaded shotgun and turned the corner into the hallway, where he immediately saw two police officers dressed in SWAT gear advance toward him. Defendant alleged that as soon as he realized the men were police officers, he dropped his shotgun and put his hands up. One officer shot Defendant in the back of the arm, which knocked Defendant to the ground. Defendant alleged the officers kept shooting and, of the four shots Defendant heard while he was on the ground with his legs up, one bullet entered through his backside. After he was shot, Defendant stated four SET officers continued past him to the bedrooms in the back of the house. Defendant was then handcuffed and moved to *175 the front of the residence, where he was treated by a medic. Durham County EMS and Officer L.M. Kirkman ("Officer Kirkman") of the Durham Police Department transported Defendant to Duke Hospital for further treatment. Following several requests from medical personnel to remove Defendant's handcuffs, Officer Kirkman removed the handcuffs six minutes into his medical treatment. Officer J.J. Wilking ("Officer Wilking") of the Durham Police Department arrived at Duke Hospital at approximately 10:50 a.m. to take custody of Defendant.
According to the nurse's note attached to Defendant's affidavit, Defendant was given three doses intravenously of 50 micrograms of Fentanyl, a strong narcotic medication indicated for severe pain, at 10:55 a.m., 11:05 a.m., and 12:15 p.m. At 2:15 p.m., Defendant was "alternat[ing] between crying loudly and yelling," and at that time, a prescription for Dilaudid, another strong narcotic pain medication, was ordered but not given to Defendant. The nurse's note states: "[w]ill give medication to [patient] after [North Carolina State Bureau of Investigation ("SBI") ] interview per police request. [Doctor] informed."
At approximately 2:37 p.m., an SBI agent interviewed Defendant about the shootings. Officer Wilking was present for some of the interview. Defendant was unable to sign the form indicating he waived his Miranda rights but wrote his initials in wavy letters. At 2:47 p.m., the interview ended, as medical staff intervened to transport Defendant to the operating room for a procedure requiring general anesthesia. Defendant was administered Dilaudid at approximately 3:08 p.m., and his operation started at approximately 3:40 p.m.
Defendant alleged that he waived his Miranda rights and made statements to law enforcement when he was "in a great deal of pain because of his gunshot wounds" and *437 "under the influence of several doses of serious pain medication[;]" therefore, he argues, his waiver was not voluntary and his statements were not reliable. Furthermore, Defendant alleged his statements were involuntary, because they were coerced by police who ordered medical personnel to withhold pain medication from him. Defendant's motion to suppress was heard at the 24 September 2014 Criminal Session of Durham County Superior Court before the Honorable G. Bryan Collins, Jr. The transcript of the suppression hearing reveals the following pertinent facts.
At approximately 2:30 p.m. on 24 January 2012, SBI Agent Brian Fleming ("Agent Fleming") arrived at Duke Hospital's emergency department to interview Defendant about the shootings. Agent Fleming testified he spoke with a nurse or doctor who confirmed Defendant was in *176 a position to speak with him. Agent Fleming entered Defendant's room, where Officer Wilking was attending for the purpose of arresting and charging Defendant upon release from the hospital.
Agent Fleming testified he advised Defendant of his Miranda rights and that Defendant "said he understood." Agent Fleming asked Defendant "if he was willing to speak with [him] now in light of those rights, [and] if he would sign the [Miranda rights waiver] form." The record indicates Defendant initialed the Miranda form at 2:38 p.m. Agent Fleming testified Defendant was unable to sign, because "he had been shot in the shoulder and that the pain made it hard for him to write.... So he just initialed the form." Agent Fleming testified that Defendant seemed to be "[i]n some pain" but appeared "calm[ ] and spoke plainly[ ] and coherently[ ]" during the nine-minute interview he conducted about the circumstances surrounding the shootings earlier that day. Agent Fleming wrote Defendant's statements in a police report.[1]
According to Agent Fleming's testimony, Defendant stated at the emergency room that he awoke that morning to what he thought was someone breaking into his home to rob his family. Defendant grabbed his 12-gauge shotgun and started toward the "commotion." As he turned into the hallway, he saw police officers dressed in SWAT gear. Defendant stated he immediately "threw the gun down and then he was shot." Agent Fleming "took that to be [sic] [Defendant] was implying that some time had elapsed." Agent Fleming "kept asking clarification questions to try to pin down exactly ... what [Defendant] did and what [the SET officers] did." Agent Fleming then testified Defendant at one point stated: "By the time I threw the gun, I was getting shot." Agent Fleming understood this statement to mean no time elapsed between when Defendant threw his gun and when he was shot. At approximately 2:47 p.m., medical personnel intervened and asked Agent Fleming to leave, so they could transport Defendant to the operating room. During cross-examination, Agent Fleming testified that he did not know what medications were administered to or prescribed for Defendant prior to interviewing him.
Officer Greg Silla ("Officer Silla") of the Durham Police Department testified that he arrived at Duke Hospital around 2:40 p.m. to relieve Officer Wilking. Officer Silla's assignment similarly was to "stand by [Defendant] and when he was to be released, to notify [his] command and take him to jail." After taking command, Officer Silla testified he saw Defendant laying in a stretcher in his room with "[m]edical staff ...
*177 around him[,] so [Officer Silla] stood outside [of] the room." When medical staff transported Defendant to the operating room, Officer Silla followed closely behind. Defendant saw him and asked him "what [he was] doing there." Officer Silla responded: "When you're done here, you're going to jail." Defendant stated: "[I]f [I] knew that, [I] would have shot that cop." Officer Silla testified that this short exchange was the only interaction he had with Defendant. On cross-examination, Officer Silla testified that he did not know what medications were administered to or prescribed for Defendant.
Defendant presented testimony of Dr. Christena Roberts, a forensic pathologist, *438 who had reviewed approximately 200 pages of Defendant's medical records associated with his hospital visit on 24 January 2012. Dr. Roberts referred to a medication sheet in relaying the timing and dosage of pain medications given to Defendant. Dr. Roberts testified that, according to the medication sheet, Defendant was administered intravenously three doses of 50 micrograms of Fentanyl within an hour and nineteen minutes prior to his custodial interview with law enforcement. Dr. Roberts explained the effects of Fentanyl as follows: "in addition to pain relief, as many of the other strong narcotics, you also get some respiratory depression and you also get sedation. And then specifically with [F]entanyl, you also may get confusion." The three intravenously administered Fentanyl doses, doses indicated for "severe pain," were administered at 10:56 a.m., 11:05 a.m., and 12:15 p.m. Dr. Roberts testified a narcotic medication at this dosage would only be given in such a quick succession if "it wasn't providing adequate pain relief, and that's supported by the notes[.]" Dr. Roberts stated that another narcotic pain medication, Dilaudid, was written next on Defendant's medication sheet, but the time when it was administered was not listed, so she looked to the nurses' notes to find more information.
Referring to a nurse's note, Dr. Roberts testified: " 'At 2:15 Dilaudid was prescribed for pain.' [The note] said, 'That the patient was crying loudly and yelling,' and so the doctor had prescribed the Dilaudid. The note continued to say that the medication was being held at the request of police until the SBI interview." The State objected to this testimony on hearsay grounds, which the trial court overruled. Defendant then submitted into evidence the nurse's note to which Dr. Roberts referred. The State objected again on hearsay grounds and the trial court overruled the objection after confirming Dr. Roberts relied upon the nurse's note in forming her opinion. The trial court admitted the nurse's note into evidence. Dr. Roberts was then asked by defense counsel: "And from your review of [Defendant's] medical records, was pain medication withheld *178 at the request of the police?" She responded: "Yes. According to this handwritten nurse's note."
After the presentation of evidence, the parties made their arguments and then the trial judge made findings of fact, conclusions of law, and orally granted Defendant's motion to suppress. The trial court's 15 October 2014 written order suppressing Defendant's statements lists the following pertinent facts.
On 24 January 2012, two police officers shot Defendant. Defendant was rushed to Duke Hospital. Officer Wilking arrived for the purpose of arresting and charging Defendant upon release from the hospital. While at the emergency department, Defendant was administered intravenously three doses of 50 micrograms of Fentanyl, a narcotic medication, for pain relief. These doses were administered at 10:56 a.m., 11:05 a.m., and 12:15 p.m. At approximately 2:15 p.m., Defendant was alternating between crying and yelling, and another narcotic, Dilaudid, was ordered but not given to Defendant at that time.
Agent Fleming arrived at Duke Hospital to investigate the shootings. Agent Fleming spoke with a doctor or nurse, who advised him that he could interview Defendant. At approximately 2:38 p.m., Agent Fleming read Defendant his Miranda rights. Defendant was unable to sign the form due to the bullet wound in his shoulder but indicated he understood by initialing a Miranda waiver. Defendant then made a statement to Agent Fleming.
At approximately 2:40 p.m., Officer Silla arrived to relieve Officer Wilking and was assigned to attend to Defendant. At approximately 2:47 p.m., Agent Fleming left Defendant's room at the request of medical personnel, who needed to transport Defendant to the operating room. Officer Silla followed as Defendant was wheeled to the operating room, and Defendant made a statement to Officer Silla not in response to questioning.
The trial judge further found as fact that "[d]uring all times relevant to this suppression issue, the Defendant was in severe pain and under the influence of strong narcotic medication[;]" that Agent Fleming and Officer Silla had no knowledge of the medications *439 given to Defendant; and that at the time of his statements, Defendant still had not been administered the prescribed Dilaudid for pain relief. Excluded from the trial court's findings of fact, however, was a resolution as to whether pain medication was ordered by law enforcement to be withheld until after the custodial interview with Agent Fleming. Also omitted were findings as to Defendant's ability to waive his rights and his degree of impairment. *179 Based upon the foregoing findings of fact, the trial judge made the following conclusions of law:
1. During all times relevant to this suppression issue, the Defendant was in custody for Miranda purposes.
2. The State failed to prove by a preponderance of the evidence that the Defendant's Miranda waiver was voluntary, based on the Court's finding that the Defendant was in custody, in severe pain, and under the influence of a sufficiently large dosage of a strong narcotic medication.
3. The Defendant made his statement to [Agent Fleming] while the Defendant was in custody and without a valid waiver of his Miranda rights.
4. Regarding the Defendant's statement to Office Silla, the State failed to prove by a preponderance of the evidence that the Defendant's statement was voluntary, based on the Court's finding that the Defendant was in custody, in severe pain, and under the influence of a sufficiently large dosage of a strong narcotic medication.
5. Considering the totality of the circumstances, it cannot be said that either statement was the product of the Defendant's free and rational choice.
6. Because both of the Defendant's statements were involuntary, and because the Defendant's waiver of his Miranda rights before his statement to [Agent Fleming] was involuntary, his rights to due process under the United States and North Carolina Constitutions were violated.
The trial judge then ordered any statements made by Defendant at the hospital, and any evidence derived therefrom, be suppressed and deemed inadmissible at trial. The State appeals.
II. Analysis
The State contends the trial court erred in concluding Defendant's waiver of Miranda rights and statements were involuntarily given. Specifically, the State contends that there is insufficient evidence to support the trial court's findings of fact and that the trial court's findings of fact do not support its conclusions of law. For the following reasons, we vacate the trial court's order and remand for new findings of fact, and, if needed, a new hearing.
*180 A. Standard of Review
"Where a defendant challenges the admissibility of an in-custody confession, the trial judge must conduct a voir dire hearing to ascertain whether defendant has been informed of their constitutional rights and has knowingly, voluntarily, and intelligently waived these rights before making the challenged admissions." State v. Strobel, 164 N.C.App. 310, 313, 596 S.E.2d 249, 252 (2004) (citing State v. Jenkins, 300 N.C. 578, 584, 268 S.E.2d 458, 463 (1980) ).
Our review of a trial court's decision on a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "Appellate courts are bound by the trial court's findings if there is some evidence to support them, and may not substitute their own judgment for that of the trial court even when there is evidence which could sustain findings to the contrary." State v. Icard, 363 N.C. 303, 312, 677 S.E.2d 822, 829 (2009) (emphasis added) (citing In re Montgomery, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984) ). "[A]n appellate court accords great deference to the trial court in this respect [.]" Cooke, 306 N.C. at 134, 291 S.E.2d at 619-20.
However, "[w]hen the voir dire evidence is conflicting, as here, the trial judge *440 must weigh the credibility of the witnesses, resolve the crucial conflicts and make appropriate findings of fact." Jenkins, 300 N.C. at 584, 268 S.E.2d at 463. Furthermore, "when the trial court fails to make findings of fact sufficient to allow the reviewing court to apply the correct legal standard, it is necessary to remand the case to the trial court." State v. Salinas, 366 N.C. 119, 124, 729 S.E.2d 63, 67 (2012) (citing State v. McKinney, 361 N.C. 53, 63-65, 637 S.E.2d 868, 875-76 (2006) ). In such a situation,
[r]emand is necessary because it is the trial court that "is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred."
Id. at 124, 729 S.E.2d at 67 (quoting Cooke, 306 N.C. at 134, 291 S.E.2d at 620 ).
*181 B. Trial Court's Findings of Fact
The State contends "[t]here were several errors in the trial court's findings of fact, including the court's improperly considering evidence that could not be considered for its truth as substantive evidence, making facts unsupported by competent evidence, and failing to resolve other relevant evidence."
1. Trial Court Improperly Considering Evidence
First, the State argues the trial judge improperly considered hearsay evidence. This challenge is relevant as to the admissibility into evidence of the nurse's note for a jury to consider, but it is irrelevant as to whether it may be considered by the trial court conducting a voir dire hearing on a preliminary motion to suppress. See In re Will of Leonard, 82 N.C.App. 646, 648, 347 S.E.2d 478, 479-80 (1986) (dismissing challenge to trial judge's consideration of court records as hearsay and, inter alia, not properly authenticated or received into evidence, on the grounds the judge considered the evidence in a voir dire examination to determine a witness' competency). Therefore, we dismiss this challenge.
2. Findings of Fact Unsupported by Competent Evidence
Second, the State argues the trial court's findings of fact were unsupported by competent evidence. Specifically, the State challenges findings of fact nos. 14, 15, 18, 19, and 20, which state:
14. During all times relevant to this suppression issue, the Defendant was in severe pain and under the influence of strong narcotic medication.
15. The Defendant was given 50 micrograms of Fentanyl at 10:56 a.m. by IV.
....
18. The Defendant received another dose of 50 micrograms of Fentanyl at 11:05 a.m., and a third dose of 50 micrograms of Fentanyl at 12:15 p.m.
19. The Defendant received a total of three doses of 50 micrograms each of Fentanyl within one hour and 19 minutes.
20. At 2:15 p.m., 23 minutes before [Agent] Fleming began his interview with the Defendant, the Defendant was alternating between crying and yelling, and the narcotic *182 Dilaudid was ordered. At the time of the interview and at the time of the statement to Officer Silla, the Dilaudid had not been administered to the Defendant.
The State contends "the trial court erred in admitting 'nurses' notes' for the truth of the matter contained within, and making substantive findings on that evidence." We note that Rules 104(a) and 1101(b)(1) of the North Carolina Evidence Code state explicitly the rules of evidence do not apply in suppression hearings. Therefore, the State's argument is without merit.
Trial judges must decide "[p]reliminary questions concerning ... the admissibility of evidence[.]" N.C. Gen.Stat. § 8C-1, Rule 104 (2014). When making such a determination, a trial judge "is not bound by the rules of evidence[.]" Id. In interpreting Rule 104, this Court has explained: "The Rule's plain meaning, the Commentary to the Rule, and sound judgment all contemplate that, in deciding preliminary matters, the trial court will consider any relevant and reliable information that comes to its attention, whether or not that information is technically admissible *441 under the rules of evidence." In re Will of Leonard, 82 N.C.App. at 648, 347 S.E.2d at 480. This is because in deciding a preliminary question such as whether evidence is admissible, "the trial court is not acting as the trier of fact. Rather, it is deciding a threshold question of law, which lies mainly, if not entirely, within the trial judge's discretion." Id.
That trial judges are not bound in certain proceedings to the formal rules of evidence is reiterated in Rule 1101(b), which provides: "The rules other than those with respect to privileges do not apply in the following situations: ... Preliminary Questions of Fact-The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a)." N.C. Gen.Stat. § 8C-1, Rule 1101(b)(1) (2014). Accordingly, the State's argument that a trial judge during a suppression hearing is unable to rely upon evidence in making its findings of fact because it might be considered hearsay at trial necessarily fails. This conclusion is bolstered by recent decisions of our Supreme Court.
In State v. Murchison, our Supreme Court relied on Rule 1101(b) in holding that because the trial court was not bound by the formal rules of evidence in a probation revocation hearing, it acted within its discretion when it admitted hearsay evidence that would have been inadmissible at trial and relied solely thereupon in support of its decision to revoke the defendant's probation. 367 N.C. 461, 464-65, 758 S.E.2d 356, 358-59 (2014). In reaching this decision, the Court in Murchison noted that *183 "[o]ur precedent applying Rule of Evidence 1101(b)(3) to sentencing proceedings is instructive." Id. at 464, 758 S.E.2d at 358. Our Supreme Court cited its decision in State v. Carroll, 356 N.C. 526, 573 S.E.2d 899 (2002), cert. denied, 539 U.S. 949, 123 S.Ct. 2624, 156 L.E.2d 640 (2003), wherein the Court determined "the Rules of Evidence do not apply in capital sentencing proceedings[,]" and concluded it was not error for a trial court to allow a jury to consider and find an aggravating factor that was based solely on inadmissible hearsay. Id. at 547, 573 S.E.2d at 913. Additionally, our Supreme Court in Carroll reasoned that the hearsay evidence was " 'reliable evidence relevant to the State's duty to prove its aggravating circumstances' and was properly admitted." Murchison, 367 N.C. at 464-65, 758 S.E.2d at 358 (quoting Carroll, 356 N.C. at 547, 573 S.E.2d at 913 ).
In addition, our Supreme Court in State v. Thomas permitted the admission of hearsay evidence to prove an aggravating factor in a sentencing proceeding, citing Rule of Evidence 1101(b)(3) and concluding as follows: "We have repeatedly stated that the Rules of Evidence do not apply in capital sentencing proceedings. Therefore, a trial court has great discretion to admit any evidence relevant to sentencing." 350 N.C. 315, 359, 514 S.E.2d 486, 513, cert. denied, 528 U.S. 1006, 120 S.Ct. 503, 145 L.Ed.2d 388 (1999). We find instructive the reasoning of our Supreme Court in permitting the trial court during sentencing and probation proceedings to admit and rely solely upon evidence which would be inadmissible at trial because the Rules of Evidence do not apply.
Here, as in Carroll, Thomas , and Murchison, we believe the trial court had "great discretion to admit any evidence relevant to" the suppression hearing. See Murchison, 367 N.C. at 465, 758 S.E.2d at 358. The trial court appropriately exercised its discretion when it admitted the nurse's note as substantive evidence underlying its findings of fact. This hearsay evidence was reliable and relevant to determining whether Defendant had voluntarily waived his Miranda rights and made statements to law enforcement officers. As "the proceeding was a [suppression hearing], the trial court was not bound by the formal rules of evidence and acted within its discretion when it admitted the hearsay evidence." Murchison, 367 N.C. at 465, 758 S.E.2d at 359 ; Rule 1101(b)(1). Furthermore, we find applicable the following passage on the reliability of hospital records:
There is good reason to treat a hospital record entry as trustworthy. Human life will often depend on the accuracy of the entry, and it is reasonable to presume that a hospital is staffed with personnel who competently perform their day-to-day tasks. To this extent at least, hospital *442 records *184 are deserving of a presumption of accuracy even more than other types of business entries.
Hedrick v. Southland Corp., 41 N.C.App. 431, 436, 255 S.E.2d 198, 202 (1979) (quoting Thomas v. Hogan, 308 F.2d 355, 361 (4th Cir.1962) ). We conclude the trial judge did not abuse his discretion in admitting the nurse's note and making substantive findings solely thereupon and, therefore, we dismiss the State's argument on this issue.
3. Failure to Resolve Conflicting Evidence
Third, the State argues the trial court failed to resolve evidentiary issues before it in reaching its conclusions of law, particularly in failing to address circumstances surrounding Defendant's Miranda waiver and statements, such as the officers' testimony as to Defendant's "condition, demeanor, interaction, understanding, awareness, consciousness, etc." We agree the trial court failed to resolve issues that arose from the evidence presented at the suppression hearing.
We review de novo a trial court's conclusions as to the voluntariness of a defendant's waiver of Miranda rights and statements. State v. Hardy, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994). "The State bears the burden of proving that a defendant made a knowing and intelligent waiver of his rights and that his statement was voluntary." State v. Knight, 340 N.C. 531, 550, 459 S.E.2d 481, 493 (1995). Where, as here, "a defendant's waiver of Miranda rights arises under the same circumstances as the making of his statement, the voluntariness issues may be evaluated as a single matter." State v. Ortez, 178 N.C.App. 236, 244, 631 S.E.2d 188, 195 (2006) (citation omitted), disc. review denied, 361 N.C. 434, 649 S.E.2d 642 (2007). Whether a waiver and statements were voluntarily made "must be found from a consideration of the entire record[.]" State v. Pruitt, 286 N.C. 442, 454, 212 S.E.2d 92, 100 (1975). "[T]he reviewing court applies a totality-of-circumstances test." State v. Wilkerson, 363 N.C. 382, 431, 683 S.E.2d 174, 204 (2009).
Involuntariness may be found when "circumstances precluding understanding or the free exercise of will were present." State v. Allen, 322 N.C. 176, 186, 367 S.E.2d 626, 631 (1988). "[I]ntoxication is a circumstance critical to the issue of voluntariness[.]" State v. McKoy, 323 N.C. 1, 22, 372 S.E.2d 12, 23 (1988), sentence vacated on other grounds, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). When intoxication is the only factor in the analysis supporting a determination of involuntariness, "[a]n inculpatory statement is admissible unless the defendant is so intoxicated that he is unconscious of the meaning of his words."
*185 State v. Phillips, 365 N.C. 103, 114, 711 S.E.2d 122, 133 (2011) (quoting State v. Oxendine, 303 N.C. 235, 243, 278 S.E.2d 200, 205 (1981) (citations omitted)). However, intoxication "is simply [one] factor to be considered in determining voluntariness." McKoy, 323 N.C. at 22, 372 S.E.2d at 23. There are a number of other relevant factors:
whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.
State v. Hyde, 352 N.C. 37, 45, 530 S.E.2d 281, 288 (2000) (quoting Hardy, 339 N.C. at 222, 451 S.E.2d at 608 (citation omitted)). In addition, "age is also to be considered by the trial judge in ruling upon the admissibility of a defendant's confession[.]" State v. Fincher, 309 N.C. 1, 8, 305 S.E.2d 685, 690 (1983). Furthermore, for a waiver of Miranda rights to be valid, it "must be ... given voluntarily 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[.]' " Wilkerson, 363 N.C. at 430-31, 683 S.E.2d at 203-04 (2009) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986) ). "[W]here it appears that an incriminating statement was given under any circumstances indicating coercion or involuntary action, that statement will be inadmissible." Strobel, 164 N.C.App. at 317, 596 S.E.2d at 255 (citing *443 State v. Steptoe, 296 N.C. 711, 716, 252 S.E.2d 707, 710 (1979) ). "[T]he question of whether Defendant's incriminating statements were made voluntarily turns on an analysis of the circumstances Defendant was subjected to before making his incriminating statements and the impact those circumstances had upon him." State v. Flood, ---N.C.App. ----, ----, 765 S.E.2d 65, 70 (2014) (citation omitted).
Here, the trial court suppressed Defendant's statements on the grounds Defendant was "in custody, in severe pain, and under the influence of a sufficiently large dosage of a strong narcotic medication[;]" however, the trial court failed to make any specific findings as to Defendant's mental condition, understanding, or coherence-relevant considerations in a voluntariness analysis-at the time his Miranda rights were waived and his statements were made. The trial court found only that Defendant was in severe pain and under the influence of several narcotic pain medications. These factors are not all the trial court *186 should consider in determining whether his waiver of rights and statements were made voluntarily.
Furthermore, Defendant moved to suppress his statements on the grounds that his statements were involuntary due to his being under the influence of strong narcotic medication, his being in severe pain, and police officers allegedly coercing his Miranda waiver and statements by withholding pain medication. The trial court failed to resolve the material conflict in evidence as to whether police coercion occurred, which is a material consideration in a voluntary analysis and bolsters our conclusion that remand is required at this stage of the proceedings.
During the suppression hearing, Dr. Roberts testified that the nurses' notes indicated medical personnel were ordered by law enforcement to withhold pain medication from Defendant until after the interview with Agent Fleming. The nurse's note, admitted into evidence and part of the record on appeal, states unambiguously that at 2:15 p.m.: "[Defendant] [a]lternates between crying loudly and yelling. Orders for Dilaudid given. Will give medication to [patient] after SBI interview per police request. [Doctor] informed." Agent Fleming and Officer Silla both testified that they neither requested, nor were they aware of any request by law enforcement, that pain medication ordered for Defendant be withheld until after his custodial interrogation.
We believe that remand to the trial court for further fact finding and a reconsideration of the evidence in light of the totality of the circumstances is the most appropriate remedy at this stage of the proceedings. As guidance on remand, we recommend the trial court reconsider the evidence and make further findings, where appropriate, on the "circumstances Defendant was subjected to before making his incriminating statements and the impact those circumstances had upon him." Flood, --- N.C.App. at ----, 765 S.E.2d at 70 (citation omitted).
Upon remand, the trial court may find the evidence does not show any deliberate attempt by law enforcement to withhold pain medication from Defendant to coerce a confession. Nonetheless, the nurse's note supports alternative inferences. The State was on notice of this evidence as a result of Defendant's motion to suppress. Officer Wilking, who according to the hospital records requested that pain medication not be given to Defendant, was not called as a witness by either the State or Defendant. The State argues on appeal: "There was also no evidence of any coercion, or any evidence [Agent] Fleming (or his presence) prevented any attempt by Duke personnel to administer any type of medical treatment or procedure, or give any medication, let alone any threat to *187 withhold treatment if defendant did not speak with Fleming." This argument is incomplete and could be misleading. The order fails to resolve the issues raised by the State of Defendant's condition after taking these medications and the issue of potential police misconduct.
"[E]xclusionary rules are very much aimed at deterring lawless conduct by police and prosecution[.]" Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618, 627 (1972) ; see also Colorado v. Connelly, 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473, 484 (1986) ("The purpose of excluding evidence seized in violation of the Constitution is to substantially deter future *444 violations of the Constitution."). It is essential that law enforcement be able to procure waivers of Miranda rights and incriminating statements voluntarily; however, restraints on law enforcement are required to protect a criminal suspect's constitutional guarantees, such as the exclusion of involuntary statements at trial. See, e.g., State v. Bordeaux, 207 N.C.App. 645, 656, 701 S.E.2d 272, 279 (2010) (citation omitted).
Because police coercion is a factor that ought to be considered and resolved in a totality-of-the-circumstances analysis on these facts, we conclude the trial court's order does not contain sufficient findings of fact at this stage of the proceedings to which this Court can properly apply the voluntariness standard. Furthermore, the order fails to resolve the issues of Defendant's condition after being administered these medications. Accordingly, the absence of the resolution of conflicting material evidence and the absence of further findings of fact necessary to conduct a meaningful review of the trial court's order requires that we remand this case to the trial court for a reconsideration of the evidence, an entry of an order that contains appropriate findings, and, if the trial court in its discretion deems it necessary, for another suppression hearing. See Salinas, 366 N.C. at 124, 729 S.E.2d at 67 ("[W]hen the trial court fails to make findings of fact sufficient to allow the reviewing court to apply the correct legal standard, it is necessary to remand the case to the trial court."); State v. Booker, 306 N.C. 302, 312-13, 293 S.E.2d 78, 84 (1982) ("The court's failure to find facts resolving the conflicting voir dire testimony was prejudicial error requiring remand to the superior court for proper findings and a determination upon such findings of whether the inculpatory statement made to police officers by defendant during his custodial interrogation was voluntarily and understandingly made."); see also State v. O'Connor, 222 N.C.App. 235, 243-44, 730 S.E.2d 248, 253-54 (2012) (remanding where trial court failed to resolve material conflicts in evidence presented at suppression hearing as to whether the police had reasonable suspicion to stop the defendant's vehicle); State v. Neal, 210 N.C.App. 645, 656, 709 S.E.2d 463, 470 (2011)
*188 (remanding where trial court failed to resolve material evidentiary conflicts during suppression hearing as to whether officer promised to drop a trespass charge in exchange for a defendant's consent to search); State v. Ghaffar, 93 N.C.App. 281, 289, 377 S.E.2d 818, 823 (1989) (remanding for new suppression hearing where trial court failed to resolve conflicting evidence as to whether the defendant gave police consent to search his vehicle).
III. Conclusion
In summary, we agree with part of the State's argument on appeal and are not satisfied the trial judge's findings of fact are complete. Because the issues of Defendant's mental condition and police coercion must be considered in this totality-of-the-circumstances analysis, we remand this matter to the trial court to make such additional findings of fact not inconsistent with this opinion and, if necessary, to conduct a new hearing on Defendant's motion to hear additional evidence.
VACATED AND REMANDED.
Judges STEELMAN and DAVIS concur.
Judge STEELMAN concurred in this opinion prior to 30 June 2015.

The police report was not included in the record on appeal.