IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-182

No. COA20-50

Filed 4 May 2021

Cleveland County, No. 09CRS057204

STATE OF NORTH CAROLINA

v.

RONALD KEITH EZZELL

Appeal by Defendant from judgment entered by Judge Todd Pomeroy in Cleveland County Superior Court. Heard in the Court of Appeals 9 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Yvonne B. Ricci, for the State-Appellee.*

*Anne Bleyman for the Defendant-Appellant.*

COLLINS, Judge.

¶ 1     Defendant Ronald Keith Ezzell appeals from judgment entered upon a jury verdict of guilty of driving while impaired. Defendant argues that his conviction must be vacated because the trial court erred by denying his motions to suppress his arrest and evidence gained as a result of his arrest. Defendant contends that his warrantless arrest was not supported by probable cause and that the trial court was required to apply the rules of evidence to testimony given during the hearing on Defendant's motions to suppress. We discern no error.

## I. Factual Background and Procedural History

On 28 December 2009, Trooper Brian Theis of the North Carolina State Highway Patrol cited Defendant for driving while impaired, displaying an expired registration plate, driving while license revoked, and driving with an open container. On 12 October 2010, the district court found Defendant guilty of all charges; on that date Defendant appealed to superior court for a trial de novo.

Prior to trial in superior court, the driving while license revoked and driving with an open container charges were dismissed. On 18 July 2016, Defendant filed pretrial motions to suppress his arrest, any evidence gained as a result of his arrest, and any testimony by Theis concerning the administration of and interpretation of the Horizontal Gaze Nystagmus ("HGN") test. The trial court heard Defendant's motions and entered an order denying them that same day. In the order, the trial court made the following findings of fact:

> 1. On December 28, 2009 at about 4:00 pm, Brian Theis, a then nine year veteran with the North Carolina Highway Patrol, was on duty and traveling East on Highway 74 (a public street or highway) in Cleveland County in his patrol car. He noticed a motor vehicle traveling in the same direction in front of him with an expired license plate. As a result he stopped the motor vehicle. Upon approaching the driver's side of the vehicle, the Trooper found the defendant as the driver of the motor vehicle seated in the driver's seat. The Trooper requested the driver's license and vehicle registration from the defendant. In talking to the defendant the Trooper then noted a strong odor of alcohol coming from the defendant's breath and person.

Upon noting the smell the Trooper asked the defendant if he had consumed alcohol to which the defendant deceptively denied any such consumption. The Trooper then requested the defendant to submit to an alcosensor screening test. The defendant submitted to the test and provided two breath samples approximately five minutes apart. The alcosensor gave positive readings on each test for the presence of alcohol and the difference between the two results was not greater than .02. The Trooper then requested the defendant to exit his vehicle to which the defendant complied. The alcosensor used by the Trooper was in proper working order and properly calibrated at the time.

2. Trooper Brian Theis began Highway Patrol School on July 29, 2000. While in this training he received instruction in field sobriety investigations which included training in the administration of the horizontal gaze and nystagmus test (HGN) for the detection of impairment and the interpretation of the results from the test. During this training Brian Theis participated in controlled alcohol consumption testing of individuals before and after their consumption of alcohol, including performance by him on them of the HGN test. At the time he was being trained and supervised by other individuals trained and experienced in the administration and interpretation of the results of HGN testing. Subsequent to Highway Patrol School, Trooper Theis spent several months in the field with an experienced Trooper for further training which included investigations of driving while impaired cases and the performance of various field sobriety tests including the HGN test. Trooper Theis also has received annual refresher training on field sobriety testing including HGN testing. During Trooper Theis' career as a Trooper with the North Carolina Highway Patrol beginning in 2000 he has conducted approximately 400 driving while impaired investigations and administered 100 to 150 HGN tests. In 2011 Trooper Theis successfully completed the ARIDE training which included training in the administration and

interpretation of HGN testing.

3. HGN testing is an accepted test for the determination of impairment and is specifically referenced and, with certain qualifications, approved as evidence by the Legislature in Rule 702 of the Rules of Evidence. The premise of the testing is the detection of noticeable involuntary nystagmus or jerking of the eyes at certain points in the movement of eyes which is an indicator of impairment. The test requires an individual suspected of impairment to follow with their eyes a stimulus being moved approximately 12 inches in front of their face. The stimulus is initially moved from left to right and followed by the eyes of the individual being tested without the individual moving their head. First the officer is looking to see that the eyes move together with equal tracking of the stimulus. If so the officer then proceeds with the remaining portions of the test. Second the officer is looking for smooth pursuit by the eyes of the stimulus. Nonsmooth pursuit or jerking of the eyes as they move with the stimulus is an indication of impairment and is observed as to each eye. Third the officer checks for distinct and sustained nystagmus when the individual's eyes are at maximum deviation. As the stimulus is held far to the left and then to the right, each eye is observed for the distinct and sustained nystagmus which if present is an indication of impairment. Fourth the officer moves the stimulus from center to a 45 degree angle with each eye. The onset of nystagmus prior to reaching the 45 degree angle is an indication of impairment. Thus there are three clues for impairment as to each eye or six in total. HGN testing has been found to be sufficiently reliable to be admissible in the trial of driving while impaired in other appellate cases to which this Court takes judicial notice.

4. Trooper Theis performed the HGN test on the defendant with the cooperation and consent of the defendant and the testing was performed consistent with the appropriate methods of testing and experience of the Trooper. The

HGN test was performed on the defendant while the defendant was seated in the patrol car, however, there is no indication that HGN testing could not be performed in such a manner nor that it would affect its reliability. The HGN testing of the defendant revealed all six indications of impairment. The Trooper has also found the HGN testing to be reliable in the detection of impairment in other driving while impaired investigations conducted by him.

5. Also prior to arrest the defendant referred to the Trooper as [ma'am] on several occasions and he had a stuttered speech. Based on the Trooper's observations and extensive experience he formed an opinion that the defendant had consumed a sufficient quantity of an impairing substance so as to appreciably impair the mental and physical faculties of the defendant and placed the defendant under arrest for driving while impaired. There were no other indications of impairment prior to defendant's arrest, however, no other field tests were performed as a result of the danger that would be posed by the high traffic area.

¶ 4 Based on these findings of fact, the trial court made the following conclusions of law:

[T]he Trooper had reasonable and articulable grounds of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the defendant was guilty of the offense of driving while impaired and thereby he had probable cause to arrest the defendant for driving while impaired. As a result the defendant's Constitutional and statutory rights were not violated and the motion[s] to suppress should be denied.

Defendant also contends that the testimony in regard to the HGN testing by the Trooper is inadmissible referring to Rule 702 of the Rules of Evidence. However, Rule 1101 of the Rules of Evidence provides that the Rules of Evidence are inapplicable to probable cause hearings.

> Therefore, Rule 702 is not applicable for determining admissibility for the consideration of probable cause, and such evidentiary determination should be left to the trial judge. While the Court allowed the [Trooper] to testify as an expert qualified in the field of the administration of HGN testing and the interpretation of the results for the detection of impairment, such labeling is somewhat meaningless for the determination of probable cause in light of the inapplicability of the Rules of Evidence to this proceeding. The Court in a probable cause hearing is required to look at the totality of the circumstances for the determination of probable cause. Assuming arguendo, however, that the requirements of Rule 702 are applicable from a Constitutional or statutory standpoint, the Court concludes for the purpose of the determination of probable cause that Trooper Theis had sufficient knowledge, skill, experience, training, and education to testify as such an expert and that this scientific and specialized knowledge assisted the Court in understanding the evidence and determining the facts in issue.

¶ 5    The case came on for trial in superior court on 11 June 2019. At trial, the expired registration charge was dismissed at the close of the State's evidence. The trial court overruled Defendant's objections to the evidence flowing from the arrest and Theis' HGN testimony when Defendant renewed them at trial. The jury found Defendant guilty of driving while impaired and the trial court sentenced Defendant to 24 months' imprisonment; 30 days to be served as an active sentence, and the remainder suspended for supervised probation. Defendant gave notice of appeal in open court and subsequently filed a written notice of appeal.

## II.    Discussion

### A. Applicability of the Rules of Evidence

We first address whether the rules of evidence applied during the hearing on Defendant's motions to suppress.  Defendant contends that the rules of evidence did apply to the suppression hearing, and that the trial court erred in permitting Theis to testify as an expert witness on HGN because he was not qualified to do so under Rule 702.

"An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty."  N.C. Gen. Stat. § 15A-979(b) (2021).  We review questions of law de novo. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

The rules of evidence "apply to all actions and proceedings in the courts of this State" unless otherwise provided.  N.C. Gen. Stat. § 8C-1, Rule 1101(a) (2016).  In turn, Rule 104(a) provides that

> [p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of [Rule 104(b)].  In making its determination it is not bound by the rules of evidence except those with respect to privileges.

N.C. Gen. Stat. § 8C-1, Rule 104(a) (2016).  Rule 1101(b) identifies specific "situations" in which "[t]he rules other than those with respect to privileges do not apply . . . ."  N.C. Gen. Stat. § 8C-1, Rule 1101(b) (2016).  These include "the

determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a)." N.C. Gen. Stat. § 8C-1, Rule 1101(b)(1).

¶ 9 Motions to suppress necessarily present preliminary questions concerning the admissibility of evidence: whether there is both a factual and legal basis to exclude the evidence at issue.[1] *See* N.C. Gen. Stat. §§ 15A-974, -978 (2016) (detailing grounds on which a motion to suppress evidence may be granted). Rules 104(a) and 1101(b)(1) therefore "state explicitly the rules of evidence do not apply in suppression hearings." *State v. Ingram*, 242 N.C. App. 173, 182, 774 S.E.2d 433, 440 (2015). Rules 104(a) and 1101(b)(1) contemplate that when faced with preliminary questions where the rules of evidence do not apply, "the trial court will consider any relevant and reliable information that comes to its attention, whether or not that information is technically admissible under the rules of evidence." *In re Will of Leonard*, 82 N.C. App. 646, 648, 347 S.E.2d 478, 480 (1986). The "trial court ha[s] 'great discretion to admit any evidence relevant to' the suppression hearing." *Ingram*, 242 N.C. App. at 183, 774

---

[1] Courts in other jurisdictions have classified motions to suppress in this way. *See Matoumba v. State*, 890 A.2d 288, 293 (Md. 2006) ("[S]uppression hearings involve the determination of preliminary questions concerning the admissibility of evidence . . . ."); *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) (same); *State v. Wright*, 843 P.2d 436, 439 (Ore. 1992) ("[A] hearing on a motion to suppress evidence involves a preliminary question of fact concerning the admissibility of evidence . . . ."); *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir. 1982) ("The purpose of the suppression hearing was, of course, to determine preliminarily the admissibility of certain evidence . . . .").

S.E.2d at 441 (quoting *State v. Thomas*, 350 N.C. 315, 359, 514 S.E.2d 486, 513 (1999)). The trial court is responsible for determining the weight to be accorded to the evidence, *Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 168, 426 S.E.2d 717, 720 (1993), and in doing so may be guided by the principles underlying the rules of evidence, *cf. State v. Nobles*, 357 N.C. 433, 439, 584 S.E.2d 765, 771 (2003) ("The Rules of Evidence do not apply at capital sentencing proceedings; however they are instructive and 'may be helpful as a guide to reliability and relevance' in capital sentencing." (citation omitted)).

¶ 10 In *Ingram*, defendant moved to suppress certain evidence on the grounds that his medical condition rendered his waiver of *Miranda* rights and subsequent statements he gave to police involuntary. *Ingram*, 242 N.C. App. at 174-75, 774 S.E.2d at 436-37. At the suppression hearing, defendant called a forensic pathologist who had reviewed his medical records. *Id.* at 177, 774 S.E.2d at 437-38. When the pathologist sought to testify as to the contents of a nurses' note, the trial court overruled the State's hearsay objection. *Id.* at 177, 774 S.E.2d at 438. Following the hearing, the trial court suppressed certain statements made by defendant and the State appealed. *Id.* at 179, 774 S.E.2d at 439.

¶ 11 On appeal, the State argued that the trial court erred by admitting and considering the nurses' note because it was hearsay. *Id.* at 182, 774 S.E.2d at 440. Rejecting the State's argument, the Court "note[d] that Rules 104(a) and 1101(b)(1)

of the North Carolina Evidence Code state explicitly the rules of evidence do not apply

in suppression hearings." *Id.* The Court broadly stated that "[a]s the proceeding was

a suppression hearing, the trial court was not bound by the formal rules of evidence

and acted within its discretion when it admitted the hearsay evidence." *Id.* at 183,

774 S.E.2d at 441 (quotations, brackets, and citations omitted).[2]

---

[2] *Ingram* is in accord with cases from other states holding that, pursuant to rules analogous to North Carolina's Rules 104 and 1101, the rules of evidence are inapplicable to suppression hearings. *See State v. Martinez*, 886 N.W.2d 256, 262 (Neb. 2016) ("[I]n a criminal case, the rules of evidence do not apply at suppression hearings."); *State v. Shirley*, 10 So. 3d 224, 228 (La. 2009) (Evidence Code "may be read to generally exempt hearings on motions to suppress evidence from the rules of evidence except with respect to privileges"); *State v. Boczar*, 863 N.E.2d 155, 159 (Ohio 2007) ("[T]he Rules of Evidence do not apply to suppression hearings."); *State v. Woinarowicz*, 720 N.W.2d 635, 642 (N.D. 2006) ("A district court is not bound by the rules of evidence in suppression hearings."); *State v. Jiles*, 663 N.W.2d 798, 807 (Wis. 2003) ("The defendant cannot prevail on an argument that the court *must* apply the rules of evidence at a suppression hearing."); *Granados*, 85 S.W.3d at 227 ("Because suppression hearings involve the determination of preliminary questions concerning the admissibility of evidence, the language of the current rules indicates that the rules of evidence (except privileges) no longer apply to suppression hearings."); *State v. Cluley*, 808 A.2d 1098, 1106 (R.I. 2002) ("In any event, the rules of evidence do not apply at suppression hearings."); *State v. Towne*, 615 A.2d 484, 493 n.1 (Vt. 1992) ("[T]he rules of evidence do not apply to preliminary suppression hearings."); *Wright*, 843 P.2d at 438 (holding that rules of evidence do not apply to suppression hearings).

     Likewise, federal circuit courts of appeal have concluded that the Federal Rules of Evidence are inapplicable to suppression hearings. *See United States v. Harmon*, 742 F.3d 451, 460 n.6 (10th Cir. 2014) ("We recognize that the Federal Rules of Evidence do not apply to suppression hearings."); *United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012) ("The Rules of Evidence are inapplicable . . . to the admission of evidence presented at suppression hearings."); *United States v. Ozuna*, 561 F.3d 728, 736 (7th Cir. 2009) (agreeing that the Federal Rules of Evidence did not apply at "pre-trial admissibility hearings" such as a suppression hearing); *United States v. Henderson*, 471 F.3d 935, 937-38 (8th Cir. 2006) (holding that the rules of evidence do not apply at suppression hearings and "[a]dmission of evidence at a suppression hearing is reviewed for abuse of discretion"); *United States v. Yousef*, 327 F.3d 56, 145 (2d Cir. 2003) (overruling objection to district court's consideration

¶ 12 Defendant's argument that the trial court was required to apply the rules of evidence and erroneously permitted Theis' testimony under those rules is therefore without merit.

¶ 13 During the suppression hearing in this case, Theis testified that he was trained in conducting the HGN test, had practiced it in multiple settings, and had administered it to Defendant consistent with his training. Theis testified that in his experience, HGN was accurate and a "very good tool to use for detection of impaired drivers." Moreover, "our General Assembly [has] clearly signaled that the results of the HGN test are sufficiently reliable to be admitted into the courts of this State." *State v. Godwin*, 369 N.C. 604, 613, 800 S.E.2d 47, 53 (2017) (citing N.C. Gen. Stat. § 8C-1, Rule 702(a1)). Theis' testimony concerning the HGN test was relevant to the question of whether Theis had probable cause to arrest Defendant for driving while

---

of an affidavit in a suppression hearing because the rules of evidence did not apply); *United States v. Bunnell*, 280 F.3d 46, 49 (1st Cir. 2002) ("The Federal Rules of Evidence, apart from testimonial privileges, do not apply at suppression hearings."); *United States v. Dickerson*, 166 F.3d 667, 679 n.2 (4th Cir. 1999) ("We do not mean to imply that the Federal Rules of Evidence are binding at a suppression hearing; they are not."), *rev'd on other grounds*, 530 U.S. 428 (2000); *United States v. Hodge*, 19 F.3d 51, 53 (D.C. Cir. 1994) ("The Rules of evidence do not generally apply to suppression hearings."); *United States v. Lee*, 541 F.2d 1145, 1146 (5th Cir. 1976) ("Rule 104(a) leaves no doubt that hearsay evidence is admissible in a suppression hearing to determine probable cause.").

While not binding on this Court, these cases provide particularly persuasive authority for our interpretation of North Carolina Rules 104 and 1101. *See State v. Collins*, 216 N.C. App. 249, 256, 716 S.E.2d 255, 260 (2011) (considering authority from federal courts where the relevant rules of evidence were in parallel).

impaired. Accordingly, the trial court did not abuse its discretion by considering the evidence during the suppression hearing.[3]

**B. Competent Evidence Supports the Trial Court's Findings of Fact**

¶ 14        Defendant argues that portions of Findings 1, 4, and 5 were not supported by competent evidence. "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *Biber*, 365 N.C. at 167-68, 712 S.E.2d at 878. Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal. *Id.* at 168, 712 S.E.2d at 878.

¶ 15        Defendant contends that there was no support for the finding that Theis "noted a strong odor of alcohol" on Defendant's breath and person. At the suppression hearing, Theis testified that his opinion on Defendant's impairment was based on his "training and experience, the strong odor, the HGN testing, and the Alco-Sensor reading." Theis also prepared an "Affidavit and Revocation Report" which noted a "strong odor of alcoholic beverage on [Defendant's] breath . . . ." The finding

---

[3] Because we hold that the Rules of Evidence did not apply at the suppression hearing, we do not reach Defendant's challenges to the trial court's conclusions of law that if those rules applied, Theis was qualified to testify as an expert and that Theis's "testimony was based upon sufficient facts and data, and was the product of reliable principles and methods, and that he applied the principles and methods reliably to the facts of this case for admissibility in this hearing."

concerning a strong odor of alcohol is therefore supported by competent evidence.

¶ 16        Defendant also argues that there was no support for the finding that Defendant "deceptively denied" any alcohol consumption.  Theis recalled that during the stop, he "asked [Defendant] if he had had anything to drink," and he "remember[ed] [Defendant] saying he had not drank anything."  As discussed above, Theis testified to detecting a strong odor of alcohol on Defendant's breath and person.  Additionally, Theis testified that two Alco-Sensor tests on Defendant returned positive results.  The trial court could infer from this evidence that Defendant had in fact been drinking an alcoholic beverage, despite his denial, and had therefore "deceptively denied" Theis's question.  *See Balawejder v. Balawejder*, 216 N.C. App. 301, 318, 721 S.E.2d 679, 689 (2011) ("It is well-settled that when acting as the finder of fact, the trial court has the opportunity to observe the demeanor of the witnesses and determine their credibility, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." (quotation marks and citation omitted)).

¶ 17        Defendant next challenges the finding that "[t]he alcosensor used by the Trooper was in proper working order and properly calibrated at the time."  Defendant contends that this finding is unsupported because Theis testified that he "had no documentation the device had been properly calibrated, although such documentation was required by highway patrol policy."  Nonetheless, Theis testified

that he alone was assigned the sensor, he was responsible for calibrating it, his Highway Patrol district required calibration twice a month, and the sensor was indeed properly calibrated pursuant to this policy. Defendant also challenges the trial court's findings concerning the Alco-Sensor on the grounds there was no competent evidence that the device had been approved as required by N.C. Gen. Stat. § 20-16.3(c) (2016). Theis testified, however, that the device was approved for use by the Department of Health and Human Services, as required by section 20-16.3(c). The trial court's findings concerning the Alco-Sensor were therefore supported by competent evidence.

Defendant contends that the finding that Theis "formed an opinion that the defendant had consumed a sufficient quantity of an impairing substance so as to appreciably impair the mental and physical faculties of the defendant" is not supported by competent evidence. Defendant argues that Theis testified only that Defendant was "impaired," not "appreciably impaired."

The following colloquy occurred during direct examination of Theis:

> Q: And did you feel that prior to arrest you observed him for a sufficient amount of time to form an opinion satisfactory to yourself as to whether [Defendant] had consumed a sufficient quantity of some impairing substance that would appreciably impaired [sic] his mental or physical faculties or both?
>
> A: Yes.

Q: And what was your opinion?

A: I believed that [Defendant] had consumed a sufficient amount of impairing substance to impair his physical or— physical or mental faculties or both.

Q: And what did you base your opinion on?

A: I based it off my training and experience, the strong odor, the HGN testing, and the Alco-Sensor reading.

In context it is apparent that Theis acknowledged that "[Defendant] had consumed a sufficient quantity of some impairing substance that would appreciably impaired [sic] his mental or physical faculties or both" and that Theis's omission of "appreciably" in his subsequent answer was a mere slip of the tongue. The trial court's finding concerning Theis's opinion was supported by competent evidence.

¶ 20 Defendant also challenges the finding that "no other field tests were performed as a result of the danger that would be posed by the high traffic area." Theis never testified that he performed no other tests on Defendant beyond the HGN. Instead, he testified that he could not remember whether he performed other tests, and that it was possible that he had. This finding is not supported by competent evidence.

¶ 21 Finally, Defendant broadly challenges the trial court's findings concerning the administration of and results from the HGN test. Theis testified that he was trained in conducting the HGN test on multiple occasions, had practiced administering it, Defendant agreed to take the HGN test, and he administered the test to Defendant consistent with his training. Theis indicated that upon administering the test to

Defendant, he found all six clues of impairment. Theis testified that he believed Defendant took the HGN test while seated in the front passenger seat of the patrol car. On cross examination, Theis testified that he had not received training about conducting the HGN test while the subject is seated, but no evidence that the test could not be reliably conducted in this manner was elicited. Theis testified that his training "proved to [him] that [HGN] was a very good tool to use for detection of impaired drivers" and that he found the test to be accurate. Accordingly, the trial court's findings concerning the HGN test are supported by competent evidence.

## C. The Trial Court's Findings of Fact Support its Conclusions of Law

¶ 22 Defendant argues that the trial court's findings of fact do not support the conclusion of law that Theis had probable cause to arrest Defendant for driving while impaired and that, as a result, Defendant's rights were not violated.

¶ 23 "To be lawful, a warrantless arrest must be supported by probable cause." *State v. Zuniga*, 312 N.C. 251, 259, 322 S.E.2d 140, 145 (1984). "Whether probable cause exists depends upon 'whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *State v. Streeter*, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

¶ 24 "A person commits the offense of impaired driving if he drives any vehicle upon

any highway, any street, or any public vehicular area within this State . . . [w]hile under the influence of an impairing substance." N.C. Gen. Stat. § 20-138.1(a)(1) (2009). A person is considered "under the influence of an impairing substance" where the person's "physical or mental faculties, or both, [are] appreciably impaired by an impairing substance." N.C. Gen. Stat. § 20-4.01(48b) (2009).

¶ 25        "[A]s this Court has held, the odor of alcohol on a defendant's breath, coupled with a positive alco-sensor result, is sufficient for probable cause to arrest a defendant for driving while impaired." *State v. Townsend*, 236 N.C. App. 456, 465, 762 S.E.2d 898, 905 (2014) (citing *State v. Rogers*, 124 N.C. App. 364, 477 S.E.2d 221 (1996)). In *Rogers*, for example, the defendant stopped his car to ask for directions from a trooper directing traffic in an intersection. 124 N.C. App. at 366, 477 S.E.2d at 222. When the trooper approached, he noticed that the defendant was the sole occupant of the car and detected a strong odor of alcohol on the defendant's breath. *Id.* The trooper requested that the defendant pull over and administered an Alco-Sensor test, which returned a positive result. *Id.* at 369, 477 S.E.2d at 224. We held that these circumstances gave rise to probable cause to arrest the defendant for driving while impaired. *Id.*

¶ 26        In the present case, the trial court found that Theis "noted a strong odor of alcohol coming from [Defendant's] breath and person." Theis conducted two Alco-Sensor tests using a properly calibrated device, and both samples were positive for

the presence of alcohol. *See* N.C. Gen. Stat. § 20-16.3(d)(1) (deeming positive results on an alcohol screening test admissible to determine whether probable cause existed for implied-consent offenses such as driving while impaired). Theis also performed the HGN test on Defendant "consistent with the appropriate methods of testing and [Theis's] experience[,]" and the testing revealed all six relevant indications of impairment.

Together, these findings of fact support the trial court's conclusion of law that Theis had "reasonable and articulable grounds of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that [Defendant] was guilty of the offense of driving while impaired and thereby . . . had probable cause to arrest [Defendant] for driving while impaired." The trial court did not err by denying Defendant's motion to suppress.

### III. Conclusion

The trial court did not err in concluding that the rules of evidence did not apply to the suppression hearing. Competent evidence supported the trial court's findings of fact, and the trial court's findings of fact support the conclusion of law that there was probable cause to arrest Defendant for driving while impaired. The trial court did not err by denying Defendant's motions to suppress.

NO ERROR.

Judges GORE and JACKSON concur.