**STATE v. ASHE**

[230 N.C. App. 38 (2013)]

STATE OF NORTH CAROLINA
v.
SHANNON DEVON ASHE, Defendant

No. COA13-298

Filed 1 October 2013

**Constitutional Law—due process—competency to stand trial—substantial evidence of incompetence—new trial**

Where there was substantial evidence before the trial court indicating that defendant might be incompetent to stand trial both at the time of his initial trial for assault on a person employed at a state detention facility and having attained habitual felon status, and at his habitual felon retrial, the trial court erred and violated defendant's due process rights by not ordering a competency hearing *sua sponte*. Defendant's convictions were reversed and a new trial was ordered.

Appeal by defendant from Judgment entered on or about 19 December 2012 by Judge C. Winston Gilchrist in Superior Court, Harnett County. Heard in the Court of Appeals 9 September 2013.

*Attorney General Roy A. Cooper III by Assistant Attorney General Kathleen N. Bolton, for the State.*

*Sue Genrich Berry, for defendant-appellant.*

STROUD, Judge.

Shannon Ashe ("defendant") appeals from the judgment entered on 19 December 2012 after he was found guilty of assault inflicting serious injury on a person employed at a state detention facility and having attainted habitual felon status. For the following reasons, we order a new trial on both charges.

I. Background

On 25 June 2012, defendant was indicted for assault on a person employed at a state detention facility and having attained habitual felon status. Defendant pled not guilty and proceeded to jury trial in Harnett County on 15 October 2012. At trial, the State's evidence tended to show the following:

**STATE v. ASHE**

[230 N.C. App. 38 (2013)]

On 12 November 2011, Robert Roy was employed as a correctional officer with the North Carolina Department of Correction (now Department of Public Safety), assigned to the Harnett Correctional Institution (HCI) in Lillington. On that date, defendant was an inmate at HCI. Around 9:30 a.m., defendant was lifting weights at the weight pile in HCI's "O Yard." As Mr. Roy was observing the inmates around the weight pile, defendant became aggressive toward Mr. Roy, balling his fist and loudly saying "the fucking police can't tell me what to do, the fucking police can't tell me to put my shirt down, and the fucking police can't tell me to unwrap my pants."

In response, Officer Roy ordered defendant to accompany him to the N dormitory. When they reached the entrance to the N dormitory, Officer Roy asked defendant for his identification card. Defendant gave Officer Roy his identification card and followed him inside the dormitory, toward the holding cell. When they approached the holding cell, Officer Roy told defendant that he was going to be handcuffed and placed in the holding cell until the sergeant could speak with him. Defendant responded that he did not want to be handcuffed or put in the holding cell.

As Officer Roy reached for defendant's wrist to handcuff him, defendant punched him in the face and then repeatedly hit Officer Roy in the face and head. Other correctional officers responded and subdued defendant. Officer Roy bled profusely from the assault and suffered a concussion, a broken nose, and a number of cuts and bruises, including a ruptured blood vessel in his right eye.

The jury returned a verdict of guilty as to the lesser offense of assault inflicting physical injury on a person employed at a detention facility. The trial court then proceeded to the habitual felon portion of the trial. The jury deadlocked and the court declared a mistrial as to the habitual felon charge. On 19 October 2012, defendant was re-tried solely on the habitual felon issue and the second jury found that defendant had attained habitual felon status. The trial court then sentenced defendant to a term of 101-131 months imprisonment and ordered that he receive a mental health evaluation and treatment during his incarceration. Defendant gave notice of appeal in open court.

## II. Defendant's Competence to Stand Trial

Defendant first argues that the trial court erred when it failed to *sua sponte* order a hearing to evaluate defendant's competence to stand trial at both the initial trial and at defendant's habitual felon re-trial.

Defendant contends that the trial court's failure to hold such a hearing was in violation of N.C. Gen. Stat. § 15A-1001, *et seq.*, and his constitutional right to due process of law. We agree and order a new trial.

N.C. Gen. Stat. § 15A-1001 provides:

> No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

N.C. Gen. Stat. § 15A-1001(a) (2011). "The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." N.C. Gen. Stat. § 15A-1002(a)(2011).

> In applying these statutory provisions, [our Supreme] Court has recognized that the trial court is only required to hold a hearing to determine the defendant's capacity to proceed *if* the question is raised. Therefore, the statutory right to a competency hearing is waived by the failure to assert that right at trial.

*State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (citations and quotation marks omitted), *cert. denied*, 552 U.S. 997, 169 L.Ed. 2d 351 (2007). Here, no one requested a hearing on his capacity to stand trial. Thus, defendant waived his statutory right to such a hearing.

Nevertheless, "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 43 L.Ed. 2d 103, 112-13 (1975).

> [U]nder the Due Process Clause of the United States Constitution, a criminal defendant may not be tried unless he is competent. As a result, a trial court has a constitutional duty to institute, *sua sponte*, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent. In enforcing this constitutional right, the standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable

> degree of rational understanding and has a rational as well
> as factual understanding of the proceedings against him.

*Badgett,* 361 N.C. at 259, 644 S.E.2d at 221. (citations, quotation marks, and brackets omitted).

Here, the trial court was presented with substantial evidence establishing that defendant may have been incompetent to stand trial at the time of both the assault trial and the re-trial on the habitual felon charge. Defendant proffered evidence of his extensive mental health treatment history and testimony from a treating psychiatrist. According to those records and the psychiatrist's testimony, defendant has been diagnosed with paranoid schizophrenia, anti-social personality disorder, and cocaine dependency in remission. While he is medicated, most of defendant's symptoms disappear and he has long periods of lucidity. At other times, however, and especially when he is not properly medicated, he suffers from active psychosis, auditory and visual hallucinations, as well as extreme paranoia.[1]

Additionally, defendant's conduct before and during trial suggests that defendant may not have been competent to proceed. Before trial, defendant refused to put his clothes on for court until his trial counsel and mother convinced him to do so. Defendant's trial counsel initially requested that he be kept in both arm and leg chains because of previous disruptive behavior and his mental health history. The trial court itself concluded that such steps would be prudent in light of defendant's mental health history, his recent actions, and the concerns expressed by defense counsel. Ultimately, defendant's trial counsel withdrew his request for additional restraints and the trial court agreed. Nevertheless, at the outset of trial, it was clear that neither defendant's trial counsel nor the trial court knew whether defendant would comport himself properly during trial in light of his mental illnesses.

Even though defendant mostly did not act in a disruptive manner during the guilt phase of his assault trial, defendant did nonsensically interrupt the testimony of one witness and began muttering. Defendant also interrupted the voir dire of his treating psychiatrist to say "good morning." Further, it is telling that when the trial court noted defendant's presence for the record before delivering the final jury instructions,

---

1. The fact that the mental health evidence before the trial court was generally diagnostic and treatment-oriented, rather than a forensic evaluation, does not render such evidence irrelevant to determining whether there was substantial evidence that defendant may have been incompetent. *See Drope,* 420 U.S. at 176, 43 L.Ed. 2d at 115-16.

defendant interjected "Not nearly present at all. Elsewhere. You can continue, your Honor."[2]

Moreover, during the assault trial, defendant never had an extended colloquy with the trial court or testified in a manner that demonstrated his understanding of the nature of the proceedings or his ability to assist in his own defense. *Cf. State v. Staten*, 172 N.C. App. 673, 679-84, 616 S.E.2d 650, 655-58 (2005) (holding that there was not substantial evidence of the defendant's incompetence where the defendant and trial court engaged in a lengthy voluntariness colloquy wherein the defendant's responses were "lucid and responsive" and the defendant's testimony was largely rational), *app. dismissed and disc. rev. denied*, 360 N.C. 180, 626 S.E.2d 838 (2005), *cert. denied*, 547 U.S. 1081, 164 L.Ed. 2d 537 (2006); *State v. Snipes*, 168 N.C. App. 525, 530, 608 S.E.2d 381, 384 (2005) (holding that there was not substantial evidence of the defendant's incompetence where his testimony, though somewhat rambling, showed that he was "accurately oriented regarding his present circumstances" and "knew the offenses with which he was charged." (citation omitted)).

Contrary to the State's argument, the fact that defendant responded "good morning" or "good afternoon" when greeted by the trial court is not dispositive as to whether there was substantial evidence regarding defendant's competence. In *Pate*, the U.S. Supreme Court remarked that a defendant's intelligible and unremarkable exchanges with the trial judge were insufficient to overcome the "uncontradicted testimony of [the defendant's] history of pronounced irrational behavior." *Pate v. Robinson*, 383 U.S. 375, 385, 15 L.Ed. 2d 815, 822 (1966). The Court went on to state that "[w]hile [the defendant's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." *Id.*

The Court later explained:

> The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors

---

2. The U.S. Supreme Court has noted that "Some have viewed the common-law prohibition [against trial of an incompetent defendant] as a by-product of the ban against trials *in absentia*; the mentally incompetent defendant, though physically present in the courtroom, is in reality afforded no opportunity to defend himself." *Drope*, 420 U.S. at 171, 43 L.Ed. 2d at 113 (citation and quotation marks omitted).

> standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180, 43 L.Ed. 2d at 118.

Defendant's conduct at his habitual felon re-trial only added to the evidence that he may have been incompetent. At the outset, defendant addressed the court at length, but in a rambling, incoherent manner. Defendant also asked the trial court to remove his counsel, again in a largely incoherent manner. When the trial court responded to his requests, defendant refused to make eye contact with the judge or respond, though eventually he said that he was "fine as wine." During voir dire, defendant also interrupted to ask a potential juror whether she had previously been "an MP."[3]

Defendant's trial counsel noted that he had not been medicated in the two weeks prior to trial on the habitual felon charge. Although defendant mostly comported himself properly during the guilt phase of both trials, he failed to do so during sentencing. Indeed, during sentencing, he continually interrupted the prosecutor—at one point, when the prosecutor noted that defendant was a prior record level five offender, defendant interjected "and an all star." Finally, in the longest dialogue with the trial court throughout these proceedings, defendant gave a long, rambling, and incoherent statement that did not clearly demonstrate his understanding of the proceedings, though he did use several phrases relevant to sentencing.

In light of the evidence before the trial court, especially his extensive history of mental illness, including periods of psychosis, the concerns expressed both by the trial court and defense counsel as to defendant's ability to control himself during the proceedings due to his mental illness, and defendant's conduct during trial and sentencing, we conclude that there was substantial evidence before the trial court indicating that defendant might be incompetent to stand trial both at the time of his initial trial and his habitual felon re-trial. Therefore, we hold that the trial

---

3. The juror had mentioned that she had served in the Army.

court erred and violated defendant's due process rights by not ordering a competency hearing *sua sponte.*

As this Court has noted, the two remedies for the trial court's failure to order a competency hearing are either a new trial or a retrospective competency hearing. *See State v. McRae,* 163 N.C. App. 359, 367, 594 S.E.2d 71, 77 (2004) *(McRae II).* In some cases where we have determined that the trial court should have held a hearing on the defendant's competence, we have remanded for a determination of whether a retrospective assessment of the defendant's competence was possible, noting that "[t]he trial court is in the best position to determine whether it can make such a retrospective determination of defendant's competency,". *State v. McRae,* 139 N.C. App. 387, 392, 533 S.E.2d 557, 560-61 (2000) *(McRae I), cert. denied,* 356 N.C. 442, 573 S.E.2d 160 (2002).

Nevertheless, retrospective assessments of competence are a disfavored alternative remedy to a new trial. *McRae II,* 163 N.C. App. at 368, 594 S.E.2d at 77. In *McRae I,* we specifically noted that we were remanding to the trial court to determine whether a retrospective hearing could be held because that defendant "was afforded several hearings before trial, and each time the trial court followed the determination made in the corresponding psychiatric evaluation." *McRae I,* 139 N.C. App. at 391, 394, 533 S.E.2d at 560, 562. In this case, defendant's competence has *never* been assessed, let alone at a relevant time. Thus, it is clear that a retrospective determination of defendant's competence would not be possible here and we do not need to remand for the trial court to make such a determination.

Because defendant's competence to stand trial has never been evaluated and "[g]iven the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances, we cannot conclude that such a procedure would be adequate here." *Drope,* 420 U.S. at 183, 43 L.Ed. 2d at 119-20 (citations omitted); *see also Dusky v. United States,* 362 U.S. 402, 403, 4 L.Ed. 2d 824, 825 (1960) (per curiam) (recognizing the difficulty of "retrospectively determining the [defendant's] competency as of more than a year ago" and ordering a new trial and hearing as to the defendant's *present* competence). Accordingly, we reverse defendant's convictions for assault on a person employed at a state detention facility and having attained habitual felon status and order a new trial.[4]

---

4. Given our resolution of this issue, we need not address defendant's remaining arguments.

III.  Conclusion

There was substantial evidence before the trial court indicating that defendant might not have been competent to proceed at both his initial trial and at the habitual felon re-trial. Therefore, the trial court erred in failing to order a competency hearing *sua sponte* and we order a new trial.

NEW TRIAL.

Chief Judge MARTIN and Judge GEER concur.