IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1016

 Filed: 1 October 2019

Cabarrus County, Nos. 15CRS001292, -1293

STATE OF NORTH CAROLINA,

 v.

CAROLYN D. “BONNIE” SIDES, Defendant.

 Appeal by Defendant from judgments entered 11 November 2017 by Judge

Beecher R. Gray in Cabarrus County Superior Court. Heard in the Court of Appeals

24 April 2019.

 Attorney General Josh Stein, by Special Deputy Attorney General Keith
 Clayton, for the State-Appellee.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Wyatt
 Orsbon, for Defendant-Appellant.

 COLLINS, Judge.

 Defendant appeals from judgments entered upon jury verdicts finding her

guilty of three counts of felony embezzlement following trial in early November 2017.

Defendant contends that the trial court erred by (1) failing to conduct a competency

hearing before proceeding with the trial in her absence following her mid-trial

ingestion of intoxicants, and (2) amending the judgments to reflect a different date

for the commission of the relevant crimes in her absence. We discern no error.
 STATE V. SIDES

 Opinion of the Court

 I. Background

 On 7 July 2015, Defendant was indicted by a Cabarrus County Grand Jury on

four counts of felony embezzlement. On 30 November 2015, superseding indictments

were issued. The State dismissed one of the counts on 4 May 2017, leaving Defendant

charged with two Class C and one Class H counts of felony embezzlement.

 Jury trial began on 6 November 2017. Defendant was present in the courtroom

on that date, as well as on 7 and 8 November 2017, as the State presented its case-

in-chief. During those first three days of the trial, Defendant conferred with her trial

counsel on multiple occasions, and neither Defendant nor her counsel raised the issue

of Defendant’s competency to the trial court.

 On the evening of 8 November 2017, Defendant ingested 60 one-milligram

Xanax tablets in an apparent intentional overdose, and was taken to the hospital for

treatment. The trial court was made aware of this fact on the morning of 9 November

2017 before the trial resumed. The trial court told the jury there would be a delay

and sent them to the jury room. The parties and the trial court then discussed the

impact of Defendant’s overdose on the proceedings with reference to a petition for

involuntary commitment by which the treating physician sought to keep Defendant

for observation and further evaluation. In the petition for involuntary commitment,

the physician opined that Defendant was “mentally ill and dangerous to self or others

or mentally ill and in need of treatment in order to prevent further disability or

 -2-
 STATE V. SIDES

 Opinion of the Court

deterioration that would predictably result in dangerousness” and “ha[d] been

experiencing worsening depression and increased thoughts of self-harm.” The trial

court asked the parties to draft an order for the release of Defendant’s medical records

and to research the legal import of a defendant’s absence from trial under such

circumstances, and recessed the proceedings.

 When the proceedings resumed later that afternoon, the State’s attorney

stated that he had found case law that he believed allowed the trial to proceed in

Defendant’s absence, directing the trial court’s attention to State v. Minyard, 231

N.C. App. 605, 753 S.E.2d 176 (2014), discussed below. But “in an abundance of

caution,” the State’s attorney suggested continuing the proceedings until the

beginning of the following week in case Defendant was able by that time to return to

the courtroom. The trial court agreed, and released the jury. Later that afternoon,

the trial court signed the order for the release of Defendant’s medical records, revoked

Defendant’s bond, and issued an order for Defendant’s arrest once she left the

hospital.

 When the proceedings resumed on 13 November 2017, Defendant was again

absent from the courtroom and, according to her trial counsel, remained in the

hospital undergoing evaluation and treatment. The trial court asked Defendant’s

trial counsel: “Up [until] the time that this matter occurred, Mr. Russell, you have

not observed anything of [Defendant] that would indicate [Defendant] lacked

 -3-
 STATE V. SIDES

 Opinion of the Court

competency to proceed in this trial, would that be a fair statement?” Defendant’s trial

counsel agreed. The trial court then ruled that the trial would proceed in Defendant’s

absence because Defendant “voluntarily by her own actions made herself absent from

the trial[.]” Defendant’s trial counsel noted an objection to the ruling on voluntary

absence, but did not ask the trial court to conduct a competency hearing or object to

the trial court’s decision to proceed without conducting a competency hearing.

 Before bringing the jury into the courtroom and proceeding with the trial, the

trial court admitted Defendant’s medical records (which it had received over the

weekend) and the petition for involuntary commitment, and noted for the record that

it had considered this evidence in deciding to proceed. The trial court then brought

the jury back into the courtroom, instructed the jurors not to consider Defendant’s

absence in weighing the evidence or determining guilt, and allowed the State to

continue to present its case.

 At the close of the State’s evidence, Defendant moved to dismiss. Defendant

argued that the State had presented insufficient evidence to convict, but did not argue

for dismissal based upon either Defendant’s absence from the trial or the fact that

the trial court had not conducted a competency hearing before proceeding. The trial

court denied Defendant’s motion.

 Defendant put on no evidence, rested, and renewed its motion to dismiss for

insufficient evidence. Defendant again did not argue as bases for dismissal either

 -4-
 STATE V. SIDES

 Opinion of the Court

Defendant’s absence from the trial or the fact that the trial court had not conducted

a competency hearing before proceeding. The trial court again denied Defendant’s

motion. The jury deliberated and ultimately found Defendant guilty of all three

charges later that afternoon.

 Defendant returned to the courtroom on 16 November 2017 for sentencing, and

testified on her own behalf, providing a lengthy personal statement accepting

responsibility for her actions and responding to the questions of her trial counsel and

the State’s attorney without difficulty. The trial court then entered judgment against

Defendant: (1) imposing consecutive presumptive-range sentences of 60 to 84 months’

imprisonment for the Class C felonies; (2) imposing a presumptive-range sentence of

6 to 17 months’ imprisonment for the Class H felony, which the trial court suspended

for 60 months of supervised probation; and (3) ordering Defendant to pay $364,194.43

in restitution.

 Defendant filed a written notice of appeal on 28 November 2017. Sometime

before 28 December 2017, the trial court entered amended judgments in response to

a request for clarification from the Combined Records Section of the North Carolina

Department of Public Safety, changing the “Offense Date[s]” on each of the

judgments, and the Cabarrus County Clerk of Superior Court filed Combined

Records’ request with a response thereto noting that the trial court had committed

“clerical error, only.” Defendant was not present when the judgments were amended.

 -5-
 STATE V. SIDES

 Opinion of the Court

 II. Discussion

 Defendant contends that the trial court erred by (1) failing to conduct a

competency hearing before proceeding with the trial in her absence following her

overdose and (2) amending the judgments in her absence. We address each argument

in turn.

 a. Competency Hearing

 “It is well established that the Due Process Clause of the Fourteenth

Amendment prohibits the criminal prosecution of a defendant who is not competent

to stand trial.” Medina v. California, 505 U.S. 437, 439 (1992); see State v. Young,

291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977) (“a conviction cannot stand where

defendant lacks capacity to defend himself”). A defendant is competent to stand trial

when he has “sufficient present ability to consult with his lawyer with a reasonable

degree of rational understanding” and has “a rational as well as factual

understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402,

402 (1960); see State v. Badgett, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007)

(applying Dusky).

 In North Carolina, a trial court has a statutory duty to hold a hearing to resolve

questions of a defendant’s competency if the issue is raised by any party. N.C. Gen.

Stat. § 15A-1002(b) (2017). In this case, Defendant never asserted her statutory right

to a competency hearing at trial, and therefore waived that right. Badgett, 361 N.C.

 -6-
 STATE V. SIDES

 Opinion of the Court

at 259, 644 S.E.2d at 221 (“[T]he statutory right to a competency hearing is waived

by the failure to assert that right at trial.”).

 Beyond the statutory duty, a “trial court has a constitutional duty to institute,

sua sponte, a competency hearing if there is substantial evidence before the court

indicating that the accused may be mentally incompetent.” Young, 291 N.C. at 568,

231 S.E.2d at 581 (quotation marks, emphasis, and citation omitted); see Godinez v.

Moran, 509 U.S. 389, 401 n.13 (1993) (“[A] competency determination is necessary

only when a court has reason to doubt the defendant’s competence.”). Put another

way, the trial court “is required to hold a competency hearing when there is a bona

fide doubt as to the defendant’s competency.” State v. Staten, 172 N.C. App. 673, 678,

616 S.E.2d 650, 654 (2005). The need for a competency hearing may arise at any

point during the proceeding, “from the time of arraignment through the return of a

verdict.” Moran, 509 U.S. at 403 (Kennedy, J., concurring). “[E]vidence of a

defendant’s irrational behavior, his demeanor at trial, and any prior medical opinion

on competence to stand trial are all relevant” to the determination of whether a

hearing is required. Drope v. Missouri, 420 U.S. 162, 180 (1975). But “[t]here are, of

course, no fixed or immutable signs which invariably indicate the need for further

inquiry to determine fitness to proceed[.]” Id.

 On appeal, Defendant argues that because of her history of mental illness and

her overdose, the trial court had substantial evidence following the overdose that

 -7-
 STATE V. SIDES

 Opinion of the Court

Defendant may have been incompetent to stand trial, and thus the trial court was

constitutionally required to initiate a competency hearing sua sponte before

proceeding, regardless of the fact that Defendant did not raise the issue. It is true

that since the United States Constitution requires a trial court to institute a

competency hearing sua sponte upon substantial evidence that the defendant may be

mentally incompetent, Young, 291 N.C. at 568, 231 S.E.2d at 581, it follows that a

defendant may not waive her constitutional right to a competency hearing (when

required) by failing to raise the issue at trial.

 We have held, however, that where a defendant waives their constitutional

right to be present at a non-capital trial, a sua sponte competency hearing is not

required. Minyard, 231 N.C. App. at 621, 753 S.E.2d at 188. A defendant waives the

right to be present at trial by voluntarily absenting herself from the trial. State v.

Wilson, 31 N.C. App. 323, 326-27, 229 S.E.2d 314, 317 (1976) (holding that a

“defendant’s voluntary and unexplained absence from court after his trial begins

constitutes a waiver of his right to be present”); see Diaz v. United States, 223 U.S.

442, 455 (1912) (“[W]here the offense is not capital and the accused is not in custody,

the prevailing rule has been, that if, after the trial has begun in his presence, he

voluntarily absents himself, this does not nullify what has been done or prevent the

completion of the trial, but, on the contrary, operates as a waiver of his right to be

present and leaves the court free to proceed with the trial in like manner and with

 -8-
 STATE V. SIDES

 Opinion of the Court

like effect as if he were present.”). And this Court has held that a defendant’s

voluntary ingestion of intoxicants may result in voluntary absence and thus waiver

of the constitutional right to be present such that a sua sponte competency hearing is

not a prerequisite to proceeding with the trial. Minyard, 231 N.C. App. at 621, 753

S.E.2d at 188.

 In Minyard, the defendant intentionally overdosed on tranquilizers and alcohol

during jury deliberations, and “became lethargic and slumped over in the courtroom.”

Id. at 613, 753 S.E.2d at 183. The trial court asked the defendant to “do [his] very

best to stay vertical, stay conscious, stay with us.” Id. at 612, 753 S.E.2d at 183. But

the defendant became “stuporous and non-responsive[,]” and the trial court had the

sheriff escort the defendant from the courtroom to seek medical attention. Id. at 613,

615, 753 S.E.2d at 183-84. The jury subsequently returned with a guilty verdict, and

the defendant appealed. Id. at 614, 753 S.E.2d at 183.

 On appeal, the Minyard defendant argued, inter alia, that the trial court

committed reversible error by failing to institute a competency hearing sua sponte

before proceeding once the defendant became non-responsive. Id. at 615, 753 S.E.2d

at 184. The Minyard Court noted that the defendant’s conduct “provide[d] ample

evidence to raise a bona fide doubt whether [the d]efendant was competent to stand

trial[,]” and that “[s]uch conduct would ordinarily necessitate a sua sponte

[competency] hearing.” Id. at 626, 753 S.E.2d at 190. The Court also noted, however,

 -9-
 STATE V. SIDES

 Opinion of the Court

that the defendant “voluntarily ingested large quantities of intoxicants in a short

period of time apparently with the intent of affecting his competency.” Id. at 626, 753

S.E.2d at 191 (emphasis in original). Because the ingestion of the intoxicants was

voluntary, the Court held that the defendant had “voluntarily waived his

constitutional right to be present,” accordingly “disagree[d] with [the d]efendant that

a sua sponte competency hearing was required,” and concluded that the trial court

had not erred by proceeding without conducting such a hearing. Id. at 621, 753 S.E.2d

at 188.

 Minyard controls our analysis in this case. Like the Minyard defendant,

Defendant here ingested a large quantity of intoxicants which rendered her unable

to be present at her trial, and did so because she was concerned about the anticipated

outcome of the trial. Compare id. at 612, 614, 753 S.E.2d at 183 (noting witness

testimony that the defendant took 15 Klonopin because he was “worried about the

outcome” of the trial), with Rule 9(d)(2) Ex. at 88 (attending physician’s report that

Defendant “took 60 mgs of Xanax in an attempt to kill herself to avoid going to jail

for Embezzlement”). The question of whether Defendant’s ingestion of the

intoxicants was an attempted suicide rather than an attempt to render herself non-

responsive does not distinguish Minyard from this case, because in both cases the

defendants ingested a large quantity of intoxicants that rendered them unable to be

 - 10 -
 STATE V. SIDES

 Opinion of the Court

present at their trials.1 And following Minyard, unless the trial court erred by

concluding that Defendant voluntarily ingested the intoxicants that caused her

absence, and thereby waived her right to be present at her trial, the failure to conduct

a sua sponte hearing regarding the competency of the voluntarily-absent Defendant

was not error. Minyard, 231 N.C. App. at 621, 753 S.E.2d at 188.

 As such, the question is not whether there should have been a competency

hearing, but whether the action resulting in the waiver of Defendant’s right to be

present was voluntary. See id. at 626, 753 S.E.2d at 191 (“Voluntary waiver of one’s

right to be present is a separate inquiry from competency, and in a non-capital case,

a defendant may waive the right by their own actions, including actions taken to

destroy competency.”). We review the trial court’s conclusion that Defendant

voluntarily waived her constitutional right to be present de novo. State v. Anderson,

222 N.C. App. 138, 142, 730 S.E.2d 262, 265 (2012) (“The standard of review for

alleged violations of constitutional rights is de novo.” (quotation marks and citation

 1 See United States v. Crites, 176 F.3d 1096, 1098 (8th Cir. 1999) (rejecting defendant’s
argument that “an attempted suicide does not constitute a voluntary absence from trial” for purposes
of Federal Rule of Civil Procedure 43, because defendant “clearly expressed his desire to be absent by
intentionally ingesting a potentially lethal mix of intoxicants and by leaving a suicide note”); Finnegan
v. State, 764 N.W.2d 856, 862 (Minn. Ct. App. 2009) (holding that “a suicide attempt can constitute a
voluntary and unjustified absence from trial constituting a waiver of the right to be present”); Bottom
v. State, 860 S.W.2d 266, 267 (Tex. Ct. App. 1993) (“The competent evidence shows [defendant] was
not absent because of some sudden unexpected medical emergency, but because he chose to ingest
large quantities of aspirin and arthritis medication. Because [defendant] chose to act in this way, his
absence was voluntary. . . . [The defendant] cannot avoid trial by intentionally disabling himself”
(emphasis omitted)); but see Peacock v. State, 77 So. 3d 1285, 1289 (Fla. 4th Dist. Ct. App. 2012) (noting
that “[t]he case law appears to be split on whether a suicide attempt constitutes a voluntary absence
from a court proceeding[,]” and collecting cases).

 - 11 -
 STATE V. SIDES

 Opinion of the Court

omitted)); cf. State v. Ingram, 242 N.C. App. 173, 184, 774 S.E.2d 433, 442 (2015)

(reviewing voluntariness of waiver of Miranda rights de novo). Whether the action

was voluntary “must be found from a consideration of the entire record[.]” Ingram,

242 N.C. App. at 184, 774 S.E.2d at 442 (quotation marks and citation omitted).

 Defendant’s arguments that she did not voluntarily waive her right to be

present are not supported by the law and are belied by a holistic review of the record.

In her brief, Defendant first argues that “any determination that a defendant waived

the right to be present at trial is predicated on an antecedent determination that the

defendant is competent to stand trial.” But this argument contradicts the Supreme

Court’s guidance that “a competency determination is necessary only when a court

has reason to doubt the defendant’s competence.” Moran, 509 U.S. at 401 n.13

(emphasis added); Young, 291 N.C. at 568, 231 S.E.2d at 581 (a “trial court has a

constitutional duty to institute, sua sponte, a competency hearing if there is

substantial evidence before the court indicating that the accused may be mentally

incompetent.” (emphasis added)). This argument is therefore unavailing.

 Defendant also argues that her overdose was not a voluntary act, but rather

the result of mental illness. There is evidence in the record that Defendant has had

mental health issues in the past, including a “past medical history of retention” and

a “history of a mood disorder[,]” and was diagnosed by the attending physician

 - 12 -
 STATE V. SIDES

 Opinion of the Court

following the overdose with “[a]djustment disorders, [w]ith mixed anxietyand [sic]

depressed mood” and “[u]nspecified anxiety disorder.”

 But a consideration of the entire record does not convince us that Defendant’s

overdose was the result of mental illness. The record reflects that Defendant reported

to the attending physician at the hospital that, prior to the overdose, (1) she had not

been receiving any outpatient mental health services other than getting prescriptions

from her primary care doctor, (2) she had never before been psychiatrically

hospitalized, and (3) she had never before tried to hurt herself. Defendant spent the

three days she was present at her trial conferring with her trial counsel, who told the

trial court that he had not observed anything causing him concern about Defendant’s

competency prior to the overdose. And after speaking with Defendant and her

stepson following the overdose, the attending physician noted that Defendant (1) had

“informed her family that she was not going to go to jail” and “planned to kill

herself[,]” (2) wrote goodbye letters to her grandchildren, and then (3) ingested an

overdose of a powerful intoxicant “trying to kill herself.” The fact that Defendant was

committed involuntarily subsequent to her overdose does not change our analysis,

since Defendant’s involuntary commitment was a direct result of her overdose. N.C.

Gen. Stat. § 15A-1443(c) (2017) (“A defendant is not prejudiced by . . . error resulting

from his own conduct.”).

 - 13 -
 STATE V. SIDES

 Opinion of the Court

 The foregoing facts convince us that Defendant’s attempt to execute a

purposeful plan to commit suicide by overdosing on powerful intoxicants to avoid jail

was done voluntarily. As a result, Defendant voluntarily waived her right to be

present at her trial, and following Minyard, we conclude that the trial court did not

err by proceeding with Defendant’s trial in her absence without first conducting a sua

sponte competency hearing.

 b. Amended Judgments

 Defendant also argues that the trial court erred by amending the judgments

entered against her to reflect different “Offense Date[s]” in her absence.

 A criminal defendant has a common-law right to be present at the time her

sentence is imposed. State v. Pope, 257 N.C. 326, 330, 126 S.E.2d 126, 129 (1962)

(“The right to be present at the time sentence or judgment is pronounced is a common

law right, separate and apart from the constitutional or statutory right to be present

at the trial.”). That right includes the right to be present any time the sentence is

substantively changed. State v. Crumbley, 135 N.C. App. 59, 67, 519 S.E.2d 94, 99

(1999) (vacating and remanding for new sentencing hearing where defendant was

present when sentence was initially rendered but was not present for sentence’s

subsequent alteration because defendant was not afforded the opportunity to be

heard on the change).

 - 14 -
 STATE V. SIDES

 Opinion of the Court

 But where the trial court imposes a sentence in the defendant’s presence and

later amends the judgment ex parte to address a clerical error without changing the

substance of the sentence, there is no error. State v. Jarman, 140 N.C. App. 198, 202-

04, 535 S.E.2d 875, 878-79 (2000); see State v. Willis, 199 N.C. App. 309, 311, 680

S.E.2d 772, 774 (2009) (“It is universally recognized that a court of record has the

inherent power and duty to make its records speak the truth. It has the power to

amend its records, correct the mistakes of its clerk or other officers of the court, or to

supply defects or omissions in the record[.]” (citation omitted)). Clerical error has

been defined as “[a]n error resulting from a minor mistake or inadvertence,

esp[ecially] in writing or copying something on the record, and not from judicial

reasoning or determination.” Willis, 199 N.C. App. at 311, 680 S.E.2d at 774

(quotation marks and citation omitted). We review the question of whether a

defendant was improperly sentenced outside his presence de novo. State v. Briggs,

249 N.C. App. 95, 97, 790 S.E.2d 671, 673 (2016).

 Defendant points out that the original judgments reflected “Offense Date[s]” of

1 January 2011, dates which correspond to presumptive sentence ranges lower than

the presumptive ranges imposed by the trial court. Defendant argues that the

amendment of the judgments to reflect different “Offense Date[s]” therefore effected

substantive changes to her sentences that mandate resentencing.

 - 15 -
 STATE V. SIDES

 Opinion of the Court

 But the trial court’s amendment of the written judgments to reflect different

“Offense Date[s]” was merely the correction of clerical error. The only differences

between the original and amended judgments are that the “Offense Date[s]”

thereupon were changed to dates in 2014 which fall within the “Date Range Of

Offense” listed in the superseding indictments. Defendant does not direct our

attention to anything in the record or the transcript indicating that the jury or the

trial court determined that the crimes took place on 1 January 2011 or any other

specific date. Further, the amended judgments carry the same sentences entered via

the original judgments entered at the sentencing hearing in Defendant’s presence,

where the trial court announced that the sentences were “in the presumptive

range[s]” for the two classes of felonies.

 The facts that the trial court announced the sentences as “in the presumptive

range[s]” and imposed the precise presumptive sentence ranges for the offenses

available under the post-1 October 2013 sentencing regime—sentence ranges which

would exceed the presumptive ranges for the crimes if committed on 1 January 2011,

for which the pre-1 October 2013 regime would apply—indicate that the trial court

intended to apply the post-1 October 2013 regime, and thus concluded at the

sentencing hearing that Defendant’s crimes took place on or after that date. Since

(1) the “Date Range[s] of [the] Offense[s]” listed on the superseding indictments

include the dates in 2014 listed on the amended judgments, (2) Defendant was

 - 16 -
 STATE V. SIDES

 Opinion of the Court

present when the trial court imposed the “presumptive range” sentences applicable

to crimes committed on those dates, and (3) the amended judgments did not change

the sentences imposed, we conclude that the amendment of the dates in the amended

judgments did not effect a substantive change to the sentences requiring Defendant’s

presence. See State v. Arrington, 215 N.C. App. 161, 168, 714 S.E.2d 777, 782 (2011)

(holding no violation of right to be present when sentence imposed where amended

sentence did not “constitute an additional or other punishment” and thus caused no

substantive change to sentence). We accordingly reject Defendant’s argument that

she must be resentenced.

 III. Conclusion

 Because we conclude that Defendant voluntarily ingested the intoxicants that

caused her absence from trial, we accordingly conclude that Defendant waived her

right to be present at the trial and that the trial court did not err by proceeding with

Defendant’s trial in her absence without first conducting a sua sponte competency

hearing. And because we conclude that the trial court’s amendment of the judgments

to reflect different “Offense Date[s]” did not substantively change the sentences

imposed, we conclude that the trial did not err by effecting those amendments outside

of Defendant’s presence.

 NO ERROR.

 Judge BRYANT concurs.

 - 17 -
 STATE V. SIDES

 Opinion of the Court

Judge STROUD dissents by separate opinion.

 - 18 -
No. COA18-1016 – State v. Sides

STROUD, Judge, dissenting.

 I respectfully dissent from the majority’s opinion because the trial court, and

the majority, overlooked the necessity for defendant first to be competent to stand

trial before she can voluntarily waive her constitutional right to be present for trial.

See State v. Badgett, 361 N.C. 234, 644 S.E.2d 206 (2007). “[I]f there is substantial

evidence” that defendant “may be mentally incompetent[,]” the trial court has a duty

to hold a hearing to determine the defendant’s competency to stand trial before

proceeding and before determining that defendant was voluntarily absent from the

trial. Id. at 259, 644 S.E.2d at 221 (emphasis added). Medical professionals and a

magistrate determined that defendant was mentally ill and dangerous to herself or

others, to the extent that she was involuntarily committed during her trial, in

November of 2017. At the very least, defendant’s involuntary commitment was

“substantial evidence” that defendant “may be mentally incompetent[,]” triggering

the need for a hearing on the issue. Id. In addition, a defendant involuntarily

committed under a valid court order cannot logically be voluntarily absent from her

trial during her involuntary commitment. Involuntary commitment under North

Carolina General Statute § 122C-251 et. seq.2 does not necessarily mean that a

defendant is incompetent to stand trial, but it does raise an issue of competency to

2 Involuntary commitment generally and on the basis of mental illness is addressed in North Carolina
General Statutes § 122C-251 through § 122C-279, and much of this text has been substantially revised
since 2017. See N.C. Gen. Stat. § 122C-251 et. seq. (Supp. 2018).
 STATE V. SIDES

 STROUD, J., dissenting

stand trial. See generally id. Had the trial court held a hearing, it is possible it would

have determined defendant was competent to stand trial, but no hearing was held.

And had the trial court held a hearing and determined defendant to be competent,

there is no dispute that she was involuntarily committed and could not physically be

present in court again until she was released.

 [U]nder the Due Process Clause of the United States
 Constitution, a criminal defendant may not be tried unless
 he is competent. As a result, a trial court has a
 constitutional duty to institute, sua sponte, a competency
 hearing if there is substantial evidence before the court
 indicating that the accused may be mentally incompetent.
 In enforcing this constitutional right, the standard for
 competence to stand trial is whether the defendant has
 sufficient present ability to consult with his lawyer with a
 reasonable degree of rational understanding and has a
 rational as well as factual understanding of the
 proceedings against him.

Id. (citations, quotation marks, brackets, and emphasis omitted).

 A defendant has both a constitutional right, see id., and a statutory right as to

competency to stand trial:

 (a) No person may be tried, convicted, sentenced,
 or punished for a crime when by reason of mental illness or
 defect he is unable to understand the nature and object of
 the proceedings against him, to comprehend his own
 situation in reference to the proceedings, or to assist in his
 defense in a rational or reasonable manner. This condition
 is hereinafter referred to as “incapacity to proceed.”

N.C. Gen. Stat. § 15A-1001 (2017).

 Capacity to stand trial includes three separate requirements:

 - 20 -
 STATE V. SIDES

 STROUD, J., dissenting

 This statute provides three separate tests in the
 disjunctive. If a defendant is deficient under any of these
 tests he or she does not have the capacity to proceed. The
 test of a defendant’s mental capacity to stand trial is
 whether he has, at the time of trial, the capacity to
 comprehend his position, to understand the nature and
 object of the proceedings against him, to conduct his
 defense in a rational manner, and to cooperate with his
 counsel to the end that any available defense may be
 interposed.

State v. Mobley, ___ N.C. App. ___, ___, 795 S.E.2d 437, 439 (2017) (citations,

quotation marks, and brackets omitted).

 A trial judge is required to hold a competency
 hearing when there is a bona fide doubt as to the
 defendant’s competency even absent a request. A trial
 court has a constitutional duty to institute, sua sponte, a
 competency hearing if there is substantial evidence before
 the court indicating that the accused may be mentally
 incompetent.

Id. at ___, 795 S.E.2d at 439 (citations, quotation marks, and brackets omitted). The

State argues, and the majority agrees, that “Defendant voluntarily waived her right

to be present – through her own actions inducing the condition of her absence from

the trial proceeding[.]” Defendant argues otherwise, and the record does include

substantial discussion of defendant’s mental health and competency, although the

trial court failed to determine her capacity to stand trial before determining that she

voluntarily absented herself from trial by her suicide attempt.

 On 9 November 2017, the trial court entered its order to obtain medical

records, and it appeared the trial court would be considering the issue of capacity to

 - 21 -
 STATE V. SIDES

 STROUD, J., dissenting

stand trial after review of the records. But instead of conducting this review, the

trial court merely asked defendant’s counsel: “Up till the time that this matter

occurred, [defense counsel], you have not observed anything of her that would

indicate she lacked competency to proceed in this trial, and would that be a fair

statement?” Defense counsel confirmed that he had not previously seen anything

causing him to question Ms. Sides’ competency. The trial court then ruled, over

defendant’s objection, that defendant was voluntarily absent from trial.

 Defendant argues, and I agree, that she did raise her statutory right to a

hearing as to her capacity to stand trial. If so, this Court should review the trial

court’s action de novo. State v. Johnson, ___ N.C. App. ___, ___, 801 S.E.2d 123, 128

(2017) (“When a trial court acts contrary to a statutory mandate and a defendant is

prejudiced thereby, the right to appeal the court’s action is preserved,

notwithstanding defendant’s failure to object at trial. Defendant alleges a violation

of a statutory mandate, and alleged statutory errors are questions of law and as

such, are reviewed de novo.” (citations, quotation marks, brackets omitted)).

 But even if the statutory right was waived, defendant had a constitutional

right for the trial court “‘to institute, sua sponte, a competency hearing if there is

substantial evidence before the court indicating that the accused may be mentally

incompetent.’ Young, 291 NC at 568, 231 S.E.2d at 581[.]” But the majority then

skips over the question of the “substantial evidence” that the defendant may be

 - 22 -
 STATE V. SIDES

 STROUD, J., dissenting

mentally incompetent, as did the trial court, and moves on to voluntary waiver based

upon defendant’s “voluntary” overdose.

 The majority notes that “the trial court’s conclusion that Defendant voluntarily

waived her constitutional right to be present” is reviewed “de novo.” Our Supreme

Court has held that we review constitutional issues de novo:

 It is equally well established, however, that, when such a
 motion raises a constitutional issue, the trial court’s action
 upon it involves a question of law which is fully reviewable
 by an examination of the particular circumstances of each
 case.

State v. Searles, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981). Therefore, I will

consider whether the trial court erred as a matter of law in failing to conduct a

hearing to determine if defendant was competent to stand trial as of 9 November

2017.

 Even if the defendant does not raise the issue of competency, the trial court

has both a statutory and constitutional duty to inquire if there is “substantial

evidence . . . indicating the accused may be mentally incompetent[:]”

 The trial court has the power on its own motion to
 make inquiry at any time during a trial regarding
 defendant’s capacity to proceed. General Statute 15A-
 1002(a) provides that this question may be raised at any
 time by the prosecutor, the defendant, the defense counsel,
 or the court on its own motion. Indeed, circumstances could
 exist where the trial court has a constitutional duty to
 make such an inquiry.
 A conviction cannot stand where defendant
 lacks capacity to defend himself. A trial court
 has a constitutional duty to institute, sua

 - 23 -
 STATE V. SIDES

 STROUD, J., dissenting

 sponte, a competency hearing if there is
 substantial evidence before the court
 indicating that the accused may be mentally
 incompetent.

State v. Heptinstall, 309 N.C. 231, 235–36, 306 S.E.2d 109, 112 (1983) (citations,

quotation marks, and brackets omitted).

 Here, the trial court had a duty to hold a competency hearing upon defendant’s

involuntary commitment, as this alone is “substantial evidence” that she “may be

mentally incompetent.” Id. at 236, 306 S.E.2d at 112. After defendant was seen at

the emergency department of Carolinas HealthCare System Dr. Kimberly Stover

signed an “AFFIDAVIT AND PETITION FOR INVOLUNTARY COMMITMENT” for

defendant, and it was filed in District Court, Cabarrus County.3 Dr. Stover alleged

that she had “sufficient knowledge to believe that the respondent is a proper subject

for involuntary commitment and alleged defendant is “mentally ill and dangerous to

self or others and in need of treatment in order to prevent further disability or

deterioration that would predictably result in dangerousness.” Dr. Stover alleged

that defendant presented “after overdosing intentionally on 60 mg of Xanax. She has

been experiencing worsening depression and increased thoughts of self-harm. At this

time [patient] is not stable and for her safety she will need further evaluation.” A

magistrate issued an order for defendant’s involuntary commitment.

3 The petition was filed under North Carolina General Statutes §§ 122C-261, -281.

 - 24 -
 STATE V. SIDES

 STROUD, J., dissenting

 Under North Carolina General Statute § 122C-266(e), defendant would have

had a second examination by a physician “not later than the following regular

working day” after her initial commitment to determine if she still met the criteria

for involuntary commitment. N.C. Gen. Stat. § 122C-266 (2017). If defendant did not

meet the criteria, she should have been released. See generally id. Accordingly, on 9

November 2017, Dr. Rebecca Silver examined defendant and assessed her as follows:

 Patient presents to the emergency room after a suicide
 attempt by overdosing on a large number of Xanax tablets.
 She remains suicidal even today. She is not safe for
 treatment in the community and requires inpatient
 stabilization.

Defendant’s “Legal Status” is noted as “[i]nvoluntary[.]” Dr. Silver’s disposition was

to “Admit for Inpatient” noting “[p]atient requires inpatient psychiatric care, a bed

search has been started[.]”

 On the morning of 9 November 2017, counsel advised the trial court of

defendant’s involuntary commitment the prior evening. The trial court and counsel

then discussed how to proceed. The trial court reviewed the petition and commitment

order and noted:

 It might be useful to have her record for the last two years
 or something from the hospital if she has a record of
 depression and treatment and all that, but that would
 probably—we’d get to some point where we start to need a
 medical expert to interpret –

 [DEFENSE COUNSEL]: Yeah.

 THE COURT: -- what all that means.

 - 25 -
 STATE V. SIDES

 STROUD, J., dissenting

 After further discussion, as noted above, the trial court entered an Order for

Medical Records for release regarding “defendant’s medical treatment for the

admittance date of November 8 2017, and any days following this date for the

continued treatment of Carolyn Sides.” It is not clear why the trial court did not order

release of her prior records as mentioned on the transcript, but the order required

only records starting as of 8 November, 2017. The trial court entered the order to

obtain the records based upon defendant’s counsel’s concern that the “hospital will

not accept her husband’s consent while she is not in a mental state to release any --

it’s going to take a court order saying you’ll -- the hospital is ordered, but they’re not

going to accept his consent, just the liability in this situation.” At that point,

defendant’s counsel was not sure when she would be released, although it was noted

she could be released in as soon as 24 or 48 hours.

 The trial court and counsel for both sides received the medical records, and

when court resumed on Monday, 13 November 2017, defendant’s counsel advised the

court that defendant was still hospitalized and her family did not know when she

would be released. Defendant was still receiving treatment under the terms of her

involuntary commitment. The trial court then focused its attention on whether

defendant’s absence from court on Monday, 13 November 2017 was voluntary or

involuntary and not whether she was competent to stand trial. Defendant’s counsel

argued defendant was attempting to end her life, not just her trial:

 - 26 -
 STATE V. SIDES

 STROUD, J., dissenting

 I contend that it is somewhat of a leap for us as lay people
 and not doctors to consider that her actions are for the
 purposes of avoiding jurisdiction of the court or avoiding
 trial. [Defendant] . . . has quite a number of other factors
 in her life that are very pressing and from which certain
 personalities may find overwhelming. I would just
 contend, Your Honor, that this may be the straw that broke
 the camel’s back, but I don’t know that her efforts -- I think
 her efforts were to end her life, not to end her trial.
 And I would contend that we don’t have evidence
 regarding whether or not she voluntarily absented herself
 from the trial. We know that she attempted to absent
 herself from life itself, but I would contend that there is
 some distinction of that, that she is in custody in a medical
 facility, and we have not investigated whether or not she
 chooses or would like to be here. And so we’re making a
 leap by saying that she voluntarily absented herself from
 the trial, and we’d like to note our objection to that.

The State argued that defendant’s overdose was voluntary, and thus defendant had

waived her right to be present at her trial. The trial court ultimately ruled that

defendant had “voluntarily by her own actions made herself absent from the trial at

this point.”

 Defendant was not actually released during the remainder of her trial. After

the jury returned its verdict, defendant’s counsel noted that she was still hospitalized,

and he had not seen her while in the hospital since “they have a one-hour period per

day in which she may be visited.” Defense counsel requested that her sentencing be

postponed until her release, but he was not certain of when she would be released.

After a conference with counsel in chambers, the trial court announced:

 As far as this trial goes, what’s going to happen next is we
 will not be doing anything the rest of the day on this

 - 27 -
 STATE V. SIDES

 STROUD, J., dissenting

 particular case. But we will have – we’ll have the record
 reflect, following a lengthy conference with both counsel in
 chambers and we’d spoken to some medical personnel, we
 will speak with medical personnel again in the morning at
 10:30 to update . . . [defendant’s] status, and then we will
 proceed from there.

The Court did not resume on the next day, but instead on Thursday, November 16,

for sentencing, and defendant was present.

 The State argues, based upon State v. Minyard, 231 N.C. App. 605, 753 S.E.2d

176 (2014), that defendant’s overdose was voluntary, and thus defendant had waived

her right to be present during the proceedings, and the trial court, and the majority

of this Court, agree. But I disagree; one crucial distinction between this case and

Minyard is that defendant was involuntarily committed to a psychiatric facility based

upon her suicide attempt, and she remained involuntarily committed when her trial

resumed, and thus defendant literally could not be present in court. See id. And there

are other important distinctions between this case and Minyard. See id.

 In Minyard, the defendant was on trial for several sexual offenses. Id. at 606,

753 S.E.2d at 179. The defendant was present for trial and testified, but after jury

deliberations started, the defendant’s attorney

 notified the court that Defendant was “having a little
 problem.” Defendant was asked to “stay vertical” and the
 trial court told him:
 [Defendant], you’ve been able to join us all the
 way through this. And let me suggest to you
 that you continue to do that. If you go out on
 us, I very likely will revoke your conditions of
 release. I’ll order you arrested. We’ll call

 - 28 -
 STATE V. SIDES

 STROUD, J., dissenting

 emergency medical services; we’ll let them
 examine you. If you’re healthy, you’ll be here
 laid out on a stretcher if need be. If you’re not
 healthy, we will continue on without you,
 whether you’re here or not. So do your very
 best to stay vertical, stay conscious, stay with
 us.
Before the jury returned, the trial court received a report
that Defendant had “overdosed.” One of Defendant’s
witnesses, Evelyn Gantt, told the court that Defendant
consumed eight Xanax pills because “[h]e was just worried
about the outcome and I don’t know why he took the pills.”
Defendant’s counsel and the State did not wish to be heard
on the issue and Defendant’s pretrial release was revoked.
The sheriff was directed to have Defendant examined by
emergency medical services (“EMS”), and Defendant was
then escorted from the courtroom. The court then made
findings of fact:
 The Court finds Defendant left the courtroom
 without his lawyer.

 The Court finds that while the jury was in
 deliberation -- the jury had a question
 concerning an issue in the case -- and prior to
 the jurors being returned to the courtroom for
 a determination of the question, the Court
 directed the Defendant to -- who was in the
 courtroom at that point -- to return to the
 Defendant’s table with his counsel.
 Defendant refused, but remained in the
 courtroom. The Court permitted that.

 The Court noticed that after the question was
 resolved with the juror, that while the jury
 was out in deliberations working on
 Defendant’s case, the Defendant took an
 overdose of Xanax. While he was here in the
 courtroom and while the jury was still out in
 deliberations, Defendant became lethargic
 and slumped over in the courtroom.

 - 29 -
 STATE V. SIDES

 STROUD, J., dissenting

....

The Court finds that outside of the jury’s
presence the Court noted that Defendant was
stuporous and refused to cooperate with the
Court and refused reasonable requests by
bailiffs.
....

The Court finds that Defendant’s conduct on
the occasion disrupted the proceedings of the
Court and took substantial amount of time to
resolve how the Court should proceed. The
Court finally ordered that Defendant’s
conditions of pretrial release be revoked and
ordered the Defendant into the custody of the
sheriff, requesting the sheriff to get a medical
evaluation of the Defendant.

The Court finds that Defendant, by his own
conduct, voluntarily disrupted the
proceedings in this matter by stopping the
proceedings for a period of time so the Court
might resolve the issue of his overdose.

The Court notes that the — with the consent
of the State and Defendant’s counsel that the
jurors continued in deliberation and
continued to review matters that were
requested by them by way of question.

The Court infers from Defendant’s conduct on
the occasion that it was an attempt by him to
garner sympathy from the jurors. However,
the Court notes that all of Defendant’s
conduct that was observable was outside of
the jury’s presence.

The Court notes that both State and
Defendant prefer that the Court not instruct
jurors about Defendant’s absence. And the

 - 30 -
 STATE V. SIDES

 STROUD, J., dissenting

 Court made no reference to Defendant being
 absent when jurors came in with response to
 — or in response to question or questions that
 had been asked.
 After the jury entered its verdict, the trial court
 amended its statement after EMS indicated that
 Defendant consumed “fifteen Klonopin” and two 40–ounce
 alcoholic beverages, which the court inferred were from the
 “two beer cans . . . found in the back of his truck.”

Id. at 612–14, 753 S.E.2d at 182–83 (emphasis added).

 Minyard does not state exactly how long the defendant was absent from the

trial when being treated by EMS, but it appears he was absent for no more than a

few hours of jury deliberations. See id., 231 N.C. App. 605, 753 S.E.2d 176. The jury

was unaware of what had occurred since they were in deliberations during the

incident, except for coming into the courtroom regarding questions during

deliberations, and the defendant was back in the courtroom the next morning for the

habitual felon phase of trial and sentencing. See id. at 613-25, 753 S.E.2d at 183-90.

The defendant in Minyard was not involuntarily committed based upon his overdose,

nor did he have any additional medical treatment after he was evaluated by EMS.

See id., 231 N.C. App. 605, 753 S.E.2d 176.

 Notably, there was no evidence the defendant in Minyard had any preexisting

diagnosis or treatment for depression or other mental illness, as did defendant here,

nor is there any indication that the overdose was a suicide attempt. See id. The

defendant in Minyard simply took an overdose of drugs and alcohol in court which

made him sufficiently unresponsive that emergency medical assistance was called,

 - 31 -
 STATE V. SIDES

 STROUD, J., dissenting

but he needed no further treatment. See id. at 613, 753 S.E.2d at 183. The trial court

determined the defendant was seeking sympathy from the jurors and disrupting court

proceedings. See id. Defendant did not take her overdose during court, and she did

not disrupt court proceedings.

 Neither the State nor the majority opinion has identified any case in which a

defendant who has been involuntarily committed to a psychiatric facility has been

treated as “voluntarily” absent from trial despite its reliance on both federal and state

cases. Aside from Minyard, the majority relies upon Diaz v. United States, 223 U.S.

442, 445, 56 L. Ed. 500, 501 (1912), wherein the defendant “voluntarily absented

himself from the trial, but consented that it should proceed in his absence, but in the

presence of his counsel, which it did” and State v. Wilson, 31 N.C. App. 323, 326, 229

S.E.2d 314, 317 (1976), wherein one of two co-defendants was twice absent from trial:

once when both defendants were not present “after the court had informed the jury

that the defendants had a right not to be present, the codefendant came into the

courtroom and the trial proceeded in the absence of defendant” and second when

defendant “left for a period of about three minutes” because he had fallen asleep and

the deputy sheriff told him “to go out and wash his face.” Neither Diaz nor Wilson

are applicable to the issue of a voluntary absence due to involuntary commitment.

See Diaz, 223 U.S. 442, 56 L. Ed. 500; Wilson, 31 N.C. App. 323, 229 S.E.2d 314.

 The majority notes some non-binding cases in a footnote from other

jurisdictions where defendants who have attempted suicide during trial have been

 - 32 -
 STATE V. SIDES

 STROUD, J., dissenting

held to have voluntarily absented themselves from trial, but all are easily

distinguished from this case, and one supports this dissent. In Bottom v. State, 860

S.W. 266 (Tex. Ct. App. 1993), the Texas Court of Appeals held the trial court did not

err by determining the defendant had voluntarily absented himself from the trial by

attempting suicide, but first, the trial court held a hearing regarding his competency

to stand trial:

 After the State rested, defense counsel informed the court
 Bottom was not in the courtroom, but in the hospital,
 because he had attempted suicide, or some harm to
 himself. Defense counsel requested, and the court denied,
 a continuance. The court did, however, order a competency
 hearing from which Bottom was found competent to stand
 trial.

Id. at 267 (emphasis added). If the trial court here had done as the trial court in

Bottom did and held a competency hearing in which the defendant was held

competent to stand trial, I would agree that defendant voluntarily absented herself

from the trial. See id. Suicide attempts present a difficult issue, since all suicides

are “voluntary,” in the sense that the person has intentionally taken action to end her

own life, but if defendant was mentally ill, as both physicians determined defendant

here was at the time of her inpatient treatment, the fact that she intentionally took

pills to end her life does not necessarily mean she had the capacity to be “voluntarily”

absent from trial. As defendant’s counsel argued, “it is somewhat of a leap for us as

lay people and not doctors to consider that her actions are for the purposes of avoiding

jurisdiction of the court or avoiding trial.”

 - 33 -
 STATE V. SIDES

 STROUD, J., dissenting

 The majority opinion also states that “a consideration of the entire record does

not convince us that defendant’s overdose was the result of mental illness[,]” but the

lack of the proper record and consideration is the very issue at the heart of this case.

Our record does not have sufficient information to make a determination regarding

mental illness even if this Court were empowered to make the needed findings of fact,

which it is not. See generally State v. Chukwu, 230 N.C. App. 553, 570, 749 S.E.2d

910, 922 (2013) (noting it is the trial court’s duty to make findings of fact necessary

to determine if a defendant has the mental capacity to stand trial). Because the trial

court requested only a few days of defendant’s medical records, and not a more

extended period as the trial court actually noted may be needed, our record does not

include information regarding defendant’s history of depression noted by the

physicians which had escalated into self-harm. This Court cannot determine

defendant’s capacity to stand trial, but the record does include “substantial evidence”

that defendant “may be mentally incompetent[,]” so the trial court had a duty to hold

a hearing to determine the defendant’s competency to stand trial before determining

that defendant was voluntarily absent from the trial. Badgett, 361 N.C. 234, 644

S.E.2d 206. Again, I do not speculate as to the result, but the hearing is required

before defendant can be found voluntarily absent. See id.

 The two potential remedies for the trial court’s failure to hold a hearing

regarding defendant’s competency

 are either a new trial or a retrospective competency

 - 34 -
 STATE V. SIDES

 STROUD, J., dissenting

 hearing. In some cases where we have determined that the
 trial court should have held a hearing on the defendant’s
 competence, we have remanded for a determination of
 whether a retrospective assessment of the defendant's
 competence was possible, noting that the trial court is in
 the best position to determine whether it can make such a
 retrospective determination of defendant’s competency,
 Nevertheless, retrospective assessments of
 competence are a disfavored alternative remedy to a new
 trial. In McRae I, we specifically noted that we were
 remanding to the trial court to determine whether a
 retrospective hearing could be held because that defendant
 was afforded several hearings before trial, and each time
 the trial court followed the determination made in the
 corresponding psychiatric evaluation. In this case,
 defendant’s competence has never been assessed, let alone
 at a relevant time. Thus, it is clear that a retrospective
 determination of defendant’s competence would not be
 possible here and we do not need to remand for the trial
 court to make such a determination.
 Because defendant’s competence to stand trial has
 never been evaluated and given the inherent difficulties of
 such a nunc pro tunc determination under the most
 favorable circumstances, we cannot conclude that such a
 procedure would be adequate here. Accordingly, we
 reverse defendant’s convictions for assault on a person
 employed at a state detention facility and having attained
 habitual felon status and order a new trial.

State v. Ashe, 230 N.C. App. 38, 44, 748 S.E.2d 610, 615 (2013) (citations, quotation

marks, and brackets omitted). Since defendant’s competence to stand trial was never

assessed “at a relevant time[,]” a “retrospective determination of defendant’s

 - 35 -
 STATE V. SIDES

 STROUD, J., dissenting

competence would not be possible” in this case. I would therefore reverse and remand

for a new trial.4 Thus, I respectfully dissent.

4 Although I would not reach the second issue addressed by the majority since I would grant a new
trial, I would concur with the majority’s holding that the trial court did not err by correcting a clerical
error in the judgment.

 - 36 -